ALICE BOARDMAN, Admx.

*vs.*

JOHN M. CREIGHTON, and another.

Knox.     Opinion March 25, 1901.

*Pleading.   Negligence.   Death.   Master and Servant.   Stat. 1891, c. 124.*

1. In an action of tort to recover damages for personal injuries an allegation of duty is insufficient. The facts and circumstances from which the duty arises must be set out in the declaration, and the sufficiency of the pleading must be determined from the facts from which the duty is deduced.

2. *Held ;* That upon the material facts alleged in the declaration, the defendants cannot be held liable either upon reason or authority. Upon the general averments in the declaration, and in the absence of other particular allega-

tions, the operations in the quarry from which the injury resulted must be deemed the work of an independent contractor, who represented the will of the owner only as to the result of his work and not as to the manner of conducting it, or the means by which the result is to be accomplished; and in such a case it is settled law that, as the contractor is not the agent or servant of his employer in relation to anything but the specific results which he undertakes to produce, the employer is not responsible for the contractor's negligence, either to his servants or to third persons.

*Boardman* v. *Creighton*, 93 Maine, 17, affirmed.

Action on the case, heard on demurrer. Demurrer sustained.

This was an action brought by the plaintiff, as administratrix, to recover damages for the killing of her intestate. After the former decision in this case, 93 Maine, 17, the plaintiff amended the declaration in her writ, to which the defendants demurred. The case is stated in the opinion.

*L. M. Staples*, for plaintiff.

Counsel cited additional authorities: *City of Tiffin* v. *McCormack*, 34 Ohio St. 638; *Bennett* v. *L. & N. R. R. Co.*, 102 U. S. 235; *N. O. M. & C. R. R. Co.* v. *Henning*, 15 Wall. 649, 657; *Pantzar* v. *Tilly Foster Iron, etc. Co.*, 99 N. Y. 376; *Samuelson* v. *Cleveland Iron, etc. Co.*, 49 Mich. 164.

*C. E. & A. S. Littlefield*, for defendants.

Relation of master and servant did not exist. *Leavitt* v. *B. & A. R. R. Co.*, 89 Maine, 517.

Defendants owed no duty to plaintiff's intestate. *Burbank* v. *Bethel Steam Mill Co.*, 75 Maine, 373; *Eaton* v. *E. & N. A. Ry. Co.*, 59 Maine, 531; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 186; *Humpton* v. *Unterkircher*, 97 Iowa, 509; *Hawver* v. *Whalen*, 14 L. R. A., p. 828, and note; *Clark* v. *Fry*, 8 Ohio St. 358, 72 Am. Dec. 590; *City of Lansford* v. *Dick*, 70 Ind. 79; *Cuff* v. *Newark & N. Y. R. R. Co.*, 35 N. J. L. 22; *Tibbetts* v. *K. & L. R. R. Co.*, 62 Maine, 437; *McCarthy* v. *Second Parish of Portland*, 71 Maine, 318; *Sanford* v. *Pawtucket St. R. Co.*, 19 R. I. 650; *Percy* v. *Roland*, 16 Eng. Law & Eq. 442; *Carter* v. *Berlin Mills*, 58 N. H. 57; *Buckner* v. *The Railroad Company*, 72 Miss. 873; *Schip* v. *Pabst Brewing Co.*, 64 Minn. 22; *Fitzpatrick* v. *C. & W. I. R. R. Co.*, 31 Ill. App. 649; *Sweeny* v. *Old*

*Colony & Newport R. R. Co.*, 10 Allen, 372; *Whitmore* v. *Pulp Co.*, 91 Maine, 304.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J.   The plaintiff brings this action as administratrix on the estate of her husband, Frank E. Boardman, to recover compensation for the pecuniary injuries resulting from his death while laboring in the defendant's limerock quarry.   The case now comes to the law court a second time on a demurrer to the plaintiff's declaration.   In the former opinion (93 Maine, 17) the court say: "The degree and kind of care which the owner of premises owes to a workman employed therein vary according to the relation existing between the parties.   The care which the owner owes to his servant over whom he exercises control and who acts under the master's directions, differs in degree from that which he owes to a mere licensee and from that which he owes to the servant of an independent contractor"; and it was accordingly held that the declaration as it then stood, being the first count in the declaration now before the court, alleging that the intestate was killed through the negligence of the defendants when he was "legally at work" in the defendants' quarry and when he was "employed and lawfully at work in the defendants' quarry by the license and permission and at the request of the defendants," was bad on demurrer, for the reason that it did not state "in what capacity the plaintiff's intestate was employed in the quarry, whether as servant of the defendants, or the servant of an independent contractor, or as a licensee, or in some other capacity."

In the second count in the present declaration, upon which the plaintiff must now rely, it is alleged that " on the eighteenth day of December, A. D. 1895, the defendants were  .  .  .  . the owners and operators of a certain limerock quarry and were then and there engaged in quarrying limerock in which they employed a large number of men, and it was then and there their duty, as owners aforesaid of said quarry, to provide  .  .  .  . a suitable place for all persons lawfully at work therein, whether directly em-

ployed by them, or by some other persons with their knowledge or permission.

"And on said eighteenth day of December the defendants had contracted with one Whitney to dig limerock for them by the cask in said quarry; and said Whitney had then employed one Frank E. Boardman . . . . . to dig limerock therein for and to be used by said defendants; and it then and there became the legal duty of the defendants, while said Boardman was at work for said Whitney in said quarry, to see that the walls and bluffs of said quarry were examined from time to time in order to ascertain if any loose rock was likely to fall upon him the said Boardman; . . . . and the plaintiff says the defendants so carelessly and negligently permitted the said Whitney employed as aforesaid, to remove and excavate limerock from the walls of said quarry and from other parts thereof, and carelessly and negligently permit said Whitney to quarry and blast the rock in said quarry, so as to render the walls on the westerly side thereof unsafe for said Boardman to work therein. . . .

"And the plaintiff avers that the death of said Boardman was caused by the wrongful and negligent act of defendants in not providing suitable appliances for the purpose of ascertaining the condition of said quarry as aforesaid, and in permitting the dangerous condition of said quarry to exist while the said Frank E. Boardman was lawfully at work therein as aforesaid, and the plaintiff avers that the said Frank E. Boardman was killed and his death was caused by the negligent acts and defaults of the defendants who were the owners and operators."

The introductory averment in the count, that the defendants were "engaged in quarrying limerock in which they employed a large number of men" must be considered, and obviously was intended to be construed, in connection with the allegations in the succeeding paragraphs that "the defendants had contracted with one Whitney to dig limerock for them by the cask in said quarry," and that the plaintiff's intestate, Frank E. Boardman, was employed by Whitney, the contractor to work for him in the quarry, and at the time of the accident was engaged in digging limerock under

this employment. Thus construed, the declaration alleges in effect that the defendants operated a quarry by means of one Whitney, an independent contractor, and it contains no allegation that they operated the quarry in any other manner or by any other means.

It does not allege that under their contract with Whitney the defendants retained any supervision or control over the quarry, or gave any directions or exercised any authority whatever respecting its operation and management after Whitney took possession.

The relation of master and servant between the defendants and the intestate is not alleged to have existed, and there is no claim in the declaration to recover on that ground. On the contrary, it is distinctly alleged that the intestate was the servant of Whitney who was operating the quarry under his contract with the defendants.

Nor is there any allegation that the condition of any part of the quarry was unsafe at the time Whitney took possession and commenced operations under his contract. On the contrary, it is distinctly alleged, as one of the causes of the accident, that "the defendants so carelessly and negligently permitted the said Whitney . . . to remove and excavate limerock from the walls of said quarry and from other parts thereof and carelessly and negligently permit said Whitney to quarry and blast the rock in said quarry so as to render the walls on the westerly side thereof unsafe for said Boardman to work them." The dangerous conditions complained of are thus alleged to have been created by the operations under Whitney after he took possession of the quarry.

The declaration further alleges, however, that "it then and there became the legal duty of the defendants, while said Boardman was at work for said Whitney in said quarry, to see that the walls and bluffs of said quarry were examined from time to time in order to ascertain if any loose rock was likely to fall upon him the said Boardman." But as fully shown in the opinion of the court in this case in 93 Maine, 17, such a general allegation of duty is simply a statement of a conclusion of law, whereas by the settled rules of pleading the facts from which the duty arises "must be spread upon the record so that the court can see that the duty is

made out. " The rule is also clearly stated in *Clyne* v. *Helmes*, 61 N. J. 358, as follows: "In an action of tort to recover damages for personal injuries an allegation of duty is insufficient. The facts and circumstances from which the duty arises must be set out in the declaration, and the sufficiency of the pleading must be determined from the facts from which the duty is deduced."

It is, also, alleged in the declaration to be the duty of the defendants, as owners of the quarry, "to provide suitable tools, machinery and other appliances for the carrying on of said work, as well as a safe and suitable place for all persons, lawfully at work therein." Here, again, there is no statement of any special facts or circumstances from which such a duty could arise; but throughout the declaration all duties alleged to be resting on the defendants are made to depend on the general averment that the quarry was owned by the defendants and operated by the contractor.

It is suggested in behalf of the plaintiff, however, that the defendants are expressly charged with negligence in not providing suitable appliances for the purpose of ascertaining the condition of the quarry, and in permitting the contractor to blast the rock so as to render the walls of the quarry unsafe. But actionable negligence arises from neglect to perform a legal duty. If there was no duty resting on the defendants to furnish such appliances, they are obviously not chargeable with negligence for an omission to provide them. So, if the defendants had no duty to perform in the management or supervision of the contractor's operations in the quarry, and no right to exercise any control over them, they are not chargeable with negligence for omitting to interfere with the rights of the contractor, or for permitting him to perform his work in his own way.

If, therefore, the simple fact that the defendants owned the quarry in question and permitted Whitney to operate it under a contract to furnish limerock by the cask, rendered them liable for an injury to a servant of the contractor resulting from operations entirely under his control, the plaintiff's declaration must be deemed sufficient. Otherwise it sets out no cause of action against the defendants.

It should be further noted, that it is nowhere suggested in the declaration that the work which the contractor had undertaken to perform was in any respect unlawful, or if properly conducted, that it would necessarily result in the injury complained of. On the contrary, it appears to be claimed by clear implication that it was the contractor's careless method of operating the quarry that caused the injury. And it has already been seen that there is no allegation that the quarry was a nuisance per se, or was in a dangerous condition at the time the contractor took possession and entered upon his work.

It is accordingly the opinion of the court, that upon the material facts alleged in the declaration the defendants cannot be held liable either upon reason or authority. Upon the general averments in the declaration and in the absence of the particular allegations hereinbefore specified, the operations in the quarry from which the injury resulted must be deemed the work of an independent contractor, who represented the will of the owner only as to the result of his work and not as to the manner of conducting it, or the means by which the result is to be accomplished; and in such a case it is settled law that, as the contractor is not the agent or servant of his employer in relation to anything but the specific results which he undertakes to produce, the employer is not responsible for the contractor's negligence, either to his servants or to third persons. The rule is thus stated in Cooley on Torts, p. 646: "Where the contract is for something that may lawfully be done and is proper in its terms, and there has been no negligence in selecting a suitable person to contract with in respect to it, and no general control reserved either as respects the manner of doing the work or the agents to be employed in doing it, and the person for whom the work is to be done is interested only in the ultimate result of the work, and not in the several steps as it progresses, the latter is neither liable to third persons for the negligence of the contractor as his master, nor is he master of the persons employed by the contractor so as to be responsible to third persons for their negligence." When the work contracted to be done is in itself lawful, the presumption is that it is to be performed in a lawful

manner; and unless the relation of master and servant exists, the employer is not responsible for the negligent or tortious acts of the contractor. *Eaton* v. *Europ. & No. Am. Ry. Co.*, 59 Maine, 520 ; *Tibbetts* v. *K. & L. R. R. Co.*, 62 Maine, 437 ; *McCarthy* v. *Sec. Par. of Portland*, 71 Maine, 318. So, in *Burbank* v. *Bethel Steam Mill Co.*, 75 Maine, 373, an action to recover for property destroyed by the use of a stationary steam engine, it was held that if the engine was in the use of a third person under a contract with the defendants, by which he had the exclusive control of it, and it was not in fact a nuisance when delivered to such person but became a nuisance by his neglect to keep it in proper repair, or if the damage was caused by his negligence, the defendants would not be liable. Again, in *Leavitt* v. *Bangor & A. R. R. Co.*, 89 Maine, 509, it is declared to be settled law in this state that an employer is not liable for the negligent acts of a contractor or his servants, where the contractor carries on an independent business and in doing the work does not act under the direction and control of his employer but determines for himself in what manner it shall be carried on ; and that such employment does not create the relation of master and servant. See also *Cuff* v. *Railroad Co.*, 35 N. J. L. 18 ; and *King* v. *Railroad Co.*, 66 N. J. 184.

In *Samuelson* v. *Cleveland Iron Min. Co.*, 49 Mich. 164, a case presenting some striking analogies to the case at bar, the court say in the opinion by Judge Cooley: "It is not shown that the roof was in a dangerous condition when possession of the mine was delivered under the contract. . . . . It remains to be seen, then, whether a personal duty to guard against dangers to the miners was still incumbent upon the defendant as owner of the mine, and was continuous while the mine was being worked by the contractors. Mere ownership of the mine can certainly impose no such duty. The owner may rent a mine, resigning all charge and control over it, and at the same time put off all responsibility for what may occur in it afterwards. If he transfers no nuisance with it, and provides for nothing by his lease which will expose others to danger, he will from that time have no more concern with the consequences to others than any third person. If instead of leas-

ing he puts contractors in possession, the result must be the same if there is nothing in the contract which is calculated to bring about danger." So, in *Burbank* v. *Steam Mill Co.*, 75 Maine, supra, the relation between the defendant and an independent contractor was deemed to be in effect that of lessor and lessee; and in *Whitmore* v. *Pulp Co.*, 91 Maine, 299, cases involving the relation between owners and independent contractors are cited in support of the conclusion that the owner of private property owes to a prospective lessee, or his servant, no duty to ascertain and apprise him of unknown defects in the property to be leased, where such prospective lessee has equal opportunity to ascertain the defects. In that case the court say: "It is not questioned that, under such circumstances, the lessor owes no more duty to the lessee's servants than he does to the lessee himself.

In the case at bar the declaration fails to state any facts to show that the defendants owed to the contractor any of the duties there specified. If not liable to the contractor, they are not liable to his servants or agents.

                    *Exceptions sustained.    Demurrer sustained.*