ANNIE E. W. COBE vs. HERBERT J. BANTON.

SAME, IN Equity, vs. SAME.

Waldo.    Opinion February 26, 1910.

*Ways. Discontinuance. Obstruction. Special Damage. Revised Statutes,
chapter 22, section 13.*

Where under a petition therefor, the county commissioners laid out a county
way which included a part of a town way legally established, *held* that such
laying out by the county commissioners did not by necessary implication
discontinue another part of the town way leading into the county way.

Where the defendant obstructed a town way by building a fence across the
same, and the plaintiff was entitled to use the fenced portion of the way
for egress and ingress to her premises, and in a special manner not common
to the public travel, *held* that the plaintiff had sustained special damage
and was entitled to recover therefor.

On report.    Judgment for plaintiff.

Two cases, one an action at law to recover damages for obstruct-
ing a town way leading to the plaintiff's summer residence in North-
port, Maine, and the other a bill in equity to restrain the defendant
from further obstructing the way, and on which a temporary injunc-
tion was issued.    An agreed statement of facts was filed and both
cases were reported to the Law Court for determination.

The material facts are stated in the opinion.

*Dunton & Morse*, for plaintiff. ·

*William P. Thompson*, for defendant.

SITTING:    EMERY, C. J., SAVAGE, PEABODY, SPEAR, KING, JJ.

SPEAR, J.    This case involves an action at law and a bill in
equity ; the action for the recovery of damages for the alleged
obstruction of a public way ; the bill to restrain the defendant from
acts of further obstruction.    It comes up on the following statement
of facts.

1.   In 1879 a town way was legally laid out and built in the town of Northport, extending from the old county road leading to the Bluff, north 60 degrees east 53 rods to the west line of a lot of land owned by Alfred Cowans thence south 26¾ degrees east 19 rods and 13 feet to southerly corner of G. E. Brackett's land, etc. These lines are the northerly and easterly boundaries of the road and the road is two rods in width.

2.   In 1898, the plaintiff acquired title to the lot of land mentioned in the description of the town way as of Alfred Cowans, and built a summer residence on this lot on the easterly side of said town way and has occupied it every season since, and was occupying it in June, 1908.

3.   The only road to and from plaintiff's residence was that laid out and built by the town in 1879, and she used this road continuously in going to and from her residence without interruption down to June, 1908.

4.   In 1890, the County Commissioners of the County of Waldo, laid out a county road which covers a part of the town road above described.   A copy of the description of the county road, and plan showing the relative location of the two roads, are made a part of the case.

5.   In 1898 the plaintiff, by consent of the Municipal Officers of Northport and without any vote of the town, graded that part of the town way leading westerly from the gravel drive in front of her residence to the traveled part of the county road, and put in steps leading up to the traveled part of the county road, closing that part of the town road to travel with teams and leaving that part of the town road extending southerly to the county road, as the only means of access to her residence with teams and vehicles.

6.   The defendant owns the lot of land next southerly of the plaintiff's lot on which he has a cottage, and in June, 1908, at the time he built the fence, owned the fee in the land over which the town way passes as far north as the plaintiff's lot.

7.   In June, 1908, the defendant claimed that the plaintiff had no legal right to pass over this way to and from her house, and stretched a rope across the way to obstruct and hinder her from

passing over it.   She cut the rope, or caused it to be cut, and used the way as before.   On the 26th day of June, 1908, the defendant built a high board fence entirely across the travelled way which was a continuation of the line fence between the lots of the plaintiff and defendant.   A few days later this fence was removed by order of the Municipal Officers of Northport.

It then appears that the town way alleged to have been obstructed was legally established in 1879 ; that it has never been discontinued in accordance with any method prescribed by statute; that in 1890 the County Commissioners laid out a road which entirely covered a small section of the town way but not, as the plan shows, that part where the obstruction occurred.   The accompanying sketch, taken substantially from the plan, gives a practical idea of the relative position of the new and old way with reference to displacement, and the relative situation of the premises of the plaintiff and defendant to each.

A, B, C, D, new county road.   E, F, G, D, old town way.
G, D, F, Part of old way not displaced.   Dotted line, Fence across old way.

It should here be observed that the alteration, widening or discontinuance of the old town way, by any statutory proceeding, is not involved.   Only a new way is prayed for.   Under the latter prayer the commissioners had neither the power nor the jurisdiction to act with respect to the former matters.   The distinction which differentiates the rights and duties of the commissioners with respect to these two methods of procedure is clearly stated in *Sprague* v. *Waite*, 17 Pick. 309, in an opinion by Shaw, C. J.

Therefore but two questions are involved in this controversy. (1) Did the laying out of the county way, by necessary implication, discontinue the old town way in front of the defendant's premises, so that the location reverted to him with a right to fence it. (2) If not, was the fencing the way such a nuisance as to inflict special injury upon the plaintiff. The negative of the first question upon the facts agreed, seems to be well established. The rule enunciated in *Sprague* v. *Waitt*, supra, appears to be conclusive upon this point. In this case the petition "not seeking the 'alteration' or discontinuance of any old road there was no notice to the public that any such alteration or discontinuance was contemplated, no adjudication of the court authorized any such discontinuance, and therefore the committee had not power to discontinue any portion of the existing highway."

"But it does not appear, from the proceedings of the locating committee, that they had any such intention; none such is expressed, and indeed the result is claimed rather as a legal implication from the act of the committee, than from any manifestation of such an intent. The effect of the location, as made by the committee, was to straighten and fix the easterly line of the highway in this part; and as the old highway in that section, was of somewhat irregular width, if any corner or portion of the land of any private individual on the westerly side, came within three rods of the line thus fixed, it would thereby be cut off and set apart for the use of the public as a highway, so that the way should be at least three rods wide upon the section thus fixed. But if, by location, usage or otherwise, there was an existing highway, lying westerly of the three rod way thus fixed, it was left unaffected by their proceedings." From this case it is manifest that the new road practically covered the old road, leaving only a margin of the old way between the west line of the old, and the west line of the new, way.

In *Chadwick* v. *McCausland*, 47 Maine, 342, an analogous case, it is held, "the court cannot necessarily treat the latter, (the old way) as discontinued thereby, when the record is silent upon that subject, consequently the public easement would remain as before." The record in the case at bar is silent upon the question of discontinuance.

In *re Railroad Commissioners*, 91 Maine, 135, is to the same effect. The court say: "The highway was located along the general line of the prescriptive way, and at the railroad crossing, which is the point in question, the latter way was entirely within the location." Here it was rightly held that the new way necessarily extinguished the old one, as the public could not occupy the same space at the same time by two equivalent but entirely distinct rights of travel.

The plan and the admissions in the case at bar clearly disclose that the location of the county way was coincident with the old town way only at the place of beginning many rods away from the point of obstruction, and continued in a diverging line until at the fence complained of the whole width of the old way was left unincumbered. It is therefore apparent that the location of the county road in 1890 did not, by necessary implication, merge and thereby extinguish the town way in front of the defendant's premises.

2. Did the plaintiff by the erection of the fence, sustain special damage, different in degree from that suffered by the general public? That a fence erected across a highway is a public nuisance is not controverted. R. S., chap. 22, sec. 13, provides: "Any person injured in his comfort, property or the enjoyment of his estate by a common and public, or a private nuisance, may maintain against the offender an action on the case for his damages, unless otherwise specially provided." It is apparent that the plaintiff was entitled to use the fenced portion of the way for egress and ingress to her premises, and in a special manner, not common to the public travel. To reach the county way from the south she was obliged to pass over the fenced section of the town way; the public were not.

As every conclusion, in this class of cases, depends upon the particular facts involved, it is difficult to cite precedents, yet it is quite obvious that *Smart* v. *Lumber Co.*, 103 Maine, 37, is closely analogous to the case at bar, in which it is said: "The plaintiff has, in a legal sense, clearly suffered special damages from the acts of the defendant company in obstructing the Presque Isle stream, not because he has had occasion more than others for its use, but in a particular way as means of ingress and egress to and from his

summer cottage a use and benefit differing from that required by the public at large." See also *Norcross* v. *Thoms*, 51 Maine, 503.

In accordance with the stipulation of the parties, the entry must be,

*Judgment for the plaintiff for $10.*

*Temporary injunction made permanent.*