BARTLETT FOLEY *vs.* H. F. FARNHAM COMPANY.

PATRICK MALLOY *vs.* H. F. FARNHAM COMPANY.

Cumberland.    Opinion, December 8, 1936.

*Richard E. Harvey*, for plaintiff.
*William B. Mahoney, Theodore Gonya*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, HUDSON, MANSER, JJ.

DUNN, C. J.    After the conclusion of the evidence, the Superior Court reported these cases, the parties consenting, for final decision, with regard both to facts and law, on such of the evidence as is legally admissible.

The actions are against the owner and occupier of a sash and blind factory, closely fronting a Portland street, to recover damages for personal injuries to two pedestrians, who, one becoming

wearied, approached from the street, and sat upon a doorsill of the building, where a falling sign hurt them.

The counts in the declaration in the writs predicate liability on the theory that the suffering by an individual, in distinction from the public generally, of special damage, from a public nuisance, gives him a private right of action, provided he has shown affirmatively all the other facts which are necessary to entitle him to recover. R. S., Chap. 26, Sec. 19 ; *Cole* v. *Sprowl*, 35 Me., 161 ; *Dickey* v. *Maine Telegraph Company*, 46 Me., 483 ; *Brown* v. *Watson*, 47 Me., 161 ; *Veazie* v. *Dwinel*, 50 Me., 479 ; *Gerrish* v. *Brown*, 51 Me., 256 ; *Davis* v. *Winslow*, 51 Me., 264 ; *Dudley* v. *Kennedy*, 63 Me., 465 ; *McPheters* v. *Log Driving Co.*, 78 Me., 329, 5 A., 270 ; *Holmes* v. *Corthell*, 80 Me., 31, 12 A., 730 ; *Davis* v. *Weymouth*, 80 Me., 307, 14 A., 199 ; *Lynn* v. *Hooper*, 93 Me., 46, 44 A., 127 ; *Smart* v. *Aroostook Lumber Co.*, 103 Me., 37, 68 A., 527 ; *Smith* v. *Preston*, 104 Me., 156, 71 A., 653 ; *Cobe* v. *Banton*, 106 Me., 418, 76 A., 907 ; *Mitchell* v. *Railroad*, 123 Me., 176, 122 A., 415 ; *Yates* v. *Tiffany*, 126 Me., 128, 136 A., 668. See, too, *Pennsylvania, etc., Co.* v. *Graham*, 63 Pa. St., 290.

The torts of negligence and nuisance may be, and frequently are, coexisting and practically inseparable. A thing may be lawful in itself, and yet become a nuisance through negligence in the maintenance or use of it. *McNulty* v. *Ludwig & Company*, 138 N. Y. S., 84.

Fault, in the sense the law employs the term, must have been proximately, which means directly, causative of harm. *Carl* v. *Young*, 103 Me., 100, 68 A., 593. "The very act . . . . is *per se* proof . . . . of negligence, sufficient to sustain the charge of nuisance." *State* v. *Portland*, 74 Me., 268, 272.

Actionable negligence exists only when the party, whose negligence occasions the loss, owes a duty, arising from contract or otherwise, to the person sustaining such loss. *Kahl* v. *Love*, 37 N. J. L., 5. Disregard, and nothing more, of a general duty to the public is not a sufficient basis for a suit by an individual for negligence. Co. Litt., 56 ; Willes, 74a ; *Quincy Canal* v. *Newcomb*, 7 Met., 276, 283.

In order to maintain an action for injury from negligence, there must be shown to exist some obligation or duty from the person in-

flicting the injury, to the person on whom it was inflicted, and that such obligation or duty was violated by a want of ordinary care on the part of the defendant. *Sweeny* v. *Old Colony, etc., Company,* 10 Allen, 368. There can be no negligence unless there is a duty, which, through either commission or omission, has not been observed. *Boardman* v. *Creighton,* 95 Me., 154, 49 A., 663.

A public nuisance, on the other hand, may be said to be anything wrongfully done, or permitted, which violates public rights, and produces a common injury; when it injures that portion of the public that necessarily comes in contact with it. 20 R. C. L., 383.

Nuisance is a violation of an absolute duty; negligence, a failure to use the requisite degree of care in the particular circumstances. *Herman* v. *Buffalo,* 214 N. Y., 316, 108 N. E., 451. Whenever an absolute duty is imposed, the question ceases to be one of negligence. *Pennsylvania, etc., Co.* v. *Graham,* supra.

A nuisance, in many if not in most, instances, especially with respect to buildings or premises, presupposes negligence. *Uggla* v. *Brokaw,* 102 N. Y. S., 857, 862.

The maintenance on private property of a dangerous menace to public travel, is a nuisance; and when the danger is of such character as ought to awaken in a prudent owner a reasonable foresight of hurt to highway travelers, the duty to take care is undeniable. *Ruocco* v. *United Advertising Corporation,* 98 Conn., 241, 119 A., 48.

"A nuisance . . . consists in a use of one's own property in such a manner as to cause injury to the property, or other right, or interest of another." *Norcross* v. *Thoms,* 51 Me., 503.

If the sign was a nuisance, it was so because it endangered the public use of the way. *Staples* v. *Dickson,* 88 Me., 362, 34 A., 168. The hurt to plaintiffs must come, *qua* nuisance, to give a cause of action. *Jackson* v. *Castle,* 80 Me., 119, 13 A., 49; *Whitmore* v. *Brown,* 102 Me., 47, 58, 65 A., 516. Their hurt must be different in kind as well as degree from that suffered by others. *Franklin Wharf* v. *Portland,* 67 Me., 46; *Taylor* v. *Railway,* 91 Me., 193, 39 A., 560; *Whitmore* v. *Brown,* supra.

There is little, if any, dispute in the evidence reported.

The building, built in 1912, was a wooden one, the walls covered with galvanized iron; it had always been tenanted by defendant.

The sign, twenty-one feet long, as many inches wide, of beveled edge, proclaiming defendant's name, was, at the completion of the building, put up by a sign maker; he removed it several times, for the purpose of repainting, the latest occasion five years or more before it fell.

Meantime, security of the sign, flat against the building, had not been a matter of attention; however, nothing appears to have indicated, before the sign fell, that it was unstable.

The sign was fastened, thirteen feet from the ground, over double doors six feet wide, styled by a witness (to differentiate from other doors, one marked "office") the "shipping door," in the center of the front of the building, by pieces of iron; one end of each iron was turned to form a "hook" for the top, and a "lug" for the bottom of the sign; the other end of the iron (it resembled a spike) was driven into the wall.

The sill on which plaintiffs sat was seven and one-half inches wide; it projected from beneath the shipping door to within four inches of the street line.

The space between building and street was paved; nothing visibly marked the location of the dividing line between the street and defendant's premises.

Sunday, August 5, 1934, the day of the occurrence in question, was bright and fair; hourly wind velocity, varying from nineteen to twenty-five miles, was not extraordinary.

Of the plaintiffs, Patrick Malloy, aged sixty years, lived in a house not far from the sash factory. Industrial accident, of four years' standing, had totally incapacitated him from work.

On the day of definite mention above, he was out for an afternoon walk. Coming to a bridge, he stayed for ten minutes; thence to Commercial Street, to near defendant's building; his entire travel, he estimated, while giving testimony, at three hundred to four hundred yards. On his sworn word, he was, from his walk, tired, and his leg ached.

Bartlett Foley, the other plaintiff, fifty years old, a common laborer, came along on foot; the two men, inferably acquaintances or friends, went to and seated themselves on the doorsill.

The building was closed; no persons are shown to have been in it; none, except plaintiffs, outside.

Plaintiffs, as they testify, after being on the sill five minutes, began making ready to go to their homes.

Their postures were: Malloy had his left leg straightened out, his right hand outstretched to his cane, which pointed into the street, in which direction his body, too, was inclined; Foley's feet were on the pavement; he states that his back was not against the door.

It was under these circumstances that the sign dropped, suddenly and unexpectedly, without previous warning, striking plaintiffs, and fracturing their spines.

A witness who came to the scene shortly, and took note, says that the fallen sign was on the pavement, three feet from the building; of the fasteners, two remained on the sign; of the loosed ones, "the ends were rusted where they had gone into the building."

Counsel for plaintiffs instances *Murray* v. *McShane*, 52 Md., 217, and strenuously insists it an analogous case.

There narratio, or declaration, averred, among other things, that the plaintiff, traveling afoot, on a public way, turned from the sidewalk to the doorway of an abutting building, to tie his shoe string, and, while sitting in the doorway for such purpose, his head projecting over the sidewalk, a brick from the wall struck him.

Narratio was bad on demurrer; on appeal, reversed.

The proof, in the cases in hand, does not show that either plaintiff, when injured, was a traveler on a public way. Both had been, and intended continuing, but they had not resumed traveling.

The evidence may afford an inference that, had plaintiffs been walking, or standing near the edge of the street, the falling sign might have done them damage. What happened, when and as it did, and not what might have happened in some other manner, is of present consideration.

To avoid a possible misconception, it may be noticed that the question is not whether, if plaintiffs, in the stead of suing, were sued, they could, or not, on the facts, excuse their use of the doorsill, on the ground of temporary delay and rest, not unreasonable in time or place.

Matters of technical pleading will, where a case is submitted on report of the evidence, be regarded, unless the contrary appears, as having been waived. *Pillsbury* v. *Brown*, 82 Me., 450, 19 A., 858.

The situation here is not restricted to abstract bounds.

The arguments were made, and the briefs submitted, to aid in determining whether, under the facts and circumstances in proof, questions of both technical and substantive pleading aside, liability might be imposed on defendant.

Property has its duties as well as its rights.

The owner or occupant of land, who induces or leads others to come upon it for a lawful purpose, is liable in damages to them, they using due care, for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist without giving timely notice thereof to them or the public. *Carleton*, v. *Franconia, etc., Company*, 99 Mass., 216; *Bennett* v. *Louisville, etc., Co.*, 102 U. S., 577, 26 Law Ed., 235; *Parker* v. *Publishing Co.*, 69 Me., 173.

No express invitation brought plaintiffs to defendant's premises. An invitation, to be sure, is sometimes inferable. *Bennett* v. *Louisville, etc., Co.*, supra; *Printy* v. *Reimbold* (Iowa), 202 N. W., 122, 205 N. W., 211; *Kidder* v. *Saddler*, 117 Me., 194, 103 A., 159.

And a person may be a licensee.

There is a distinction, not always easy to be made, between an implied invitation and a mere license. The distinction seems to be that an invitation may be implied where there is a common interest or mutual advantage (as in the case of coming to a store), while only a license is implied where the object is solely that of the user. A licensee is one who is present by sufferance; he is closely allied to a trespasser. *Sweeny* v. *Old Colony, etc., Company*, supra.

The law, as the last word in the sentence just above connotes, has not only those respectively of invitee and licensee, but still another status to which it assigns persons who make entry on the lands of others; meaning now unlawful entry. Every unauthorized entry on another's property is a trespass, and anyone who makes such an entry is a trespasser. *Heller* v. *New York, etc., Co.*, 265 F., 192.

Ordinarily, when people come, for their own purposes, on the lands of others, without right, they must take the lands as they find them. *Printy* v. *Reimbold*, supra. Toward trespassers, it is the universal rule, the owner or occupier owes only the bare obligation to avoid inflicting wilful injury. *Frost* v. *Eastern Railroad*, 64 N. H., 220, 9 A., 790.

No rule is so general which admits not some exception.

But the printed pages of the report of these cases do not bring them within exception to the usual rule.

To entitle a trespasser to recover for an injury, he must do more than show negligence. It must appear that a wanton or intentional injury was inflicted on him. *Gillespie* v. *McGowan*, 100 Pa. St., 144.

A trespasser entered an abandoned and decaying freight house, and was injured by a piece of the building being blown against him in a sudden storm. He could not recover of the company; it owed him no duty. *Lary* v. *Cleveland, etc., Co.*, 78 Ind., 323, 41 Am. Rep., 572.

Liability in the spring-gun class of cases, to notice an urge in argument, arises from the fact, as Mr. Justice Holmes has pointed out, that the owner or tenant of the land, expecting the trespasser, prepared an injury, no more justified than if he had held the gun and fired it. *United Zinc, etc., Co.* v. *Van Britt*, 258 U. S., 268, 66 Law Ed., 615.

There was, on the part of defendant, no premeditation, no formed intention to do injury, by violence, to the person of either plaintiff; there was no wantonness; not even a recklessness that might be said to partake of the nature of wantonness.

"A man must use his property so as not to incommode his neighbour." "But the maxim," to quote Gibson, C. J., "extends only to neighbours who do not interfere with it or enter upon it." *Knight* v. *Abert*, 6 Barr., 472. He who suffers himself to trespass assumes all risks incident to it. No one is under responsibility to keep his place in safe condition for the visits of trespassers. Cooley on Torts, Sec. 93.

Viewed from any angle, on the evidence presented, neither plaintiff may prevail.

The cases are, on the authority of the report, remanded, that, in the Superior Court, there may be, in each case, the entry of:

*Judgment for defendant.*