STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss                          CIVIL ACTION
                                        DOCKET NO. CV-04-765
                                        REC -CUM- 10/ ...

JEFFREY E. SIMPSON,
        Plaintiff
                                        ORDER ON CROSS
v.                                      MOTIONS FOR SUMMARY
                                        JUDGMENT
CUMBERLAND COUNTY,
MARK DION, E.J. BURKE,
WAYNE PIKE, AND DANIEL
HASKELL,

        Defendants

## BEFORE THE COURT

Before the court is Defendants' Motion for Summary Judgment pursuant to M.R. Civ. P. 56, on Plaintiff's claims against Defendants Cumberland County, Mark Dion, E.J. Burke, Wayne Pike, and Officer Daniel Haskell. Also before the court is Plaintiff's Cross Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

The Plaintiff, Jeffrey Simpson is incarcerated in the United States Federal Penitentiary in Lewisburg, Pennsylvania. His expected release date is April 12, 2028. Simpson filed his Original Complaint on December 20, 2004, against Cumberland County for events Simpson alleges occurred while in custody at the Cumberland County Jail (CCJ) between October 2003 and July 2004. The Plaintiff filed an Amended Complaint on January 5, 2005, which in addition to Cumberland County, named Mark Dion, E.J. Burke, Wayne Pike, Officer Daniel Haskell, and an Unknown Officer as individual defendants. The CCJ and/or the Cumberland County Sheriff's Department employed each of the named individual defendants when Simpson was in custody in the CCJ. Count I

1

of the Complaint is a claim under the Maine Tort Claims Act (MTCA), which alleges Defendants negligently used pepper spray against a person in the jail cell next to Simpson's, causing Simpson to suffer physical pain from the pepper spray. Count II asserts negligent infliction of emotional distress and Count III asserts intentional infliction of emotional distress. Counts II and III both relate to Simpson's claim that the CCJ recorded his telephone calls.

On November 23, 2005, the Defendants filed a Motion for Summary Judgment. On December 9, 2005, Simpson filed a Motion for Leave to file an Amended Complaint, and submitted a Second Amended Complaint. On December 22, 2005, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment, and also filed a Cross Motion for Summary Judgment.

Simpson's Second Amended Complaint attempts to add Brian Cummings, Peter Crichton, Francine Breton, and Nancy Vigue as defendants, and also attempts to add additional claims, including: (1) an alleged violation of 15 M.R.S. § 711 – which provides a civil damages remedy against those who intercept wire and oral communications; (2) fraud for using a pen register; (3) spoliation of evidence;[1] (3) invasion of privacy; (4) negligence for "the manner in which [the Defendants] intercepted the Plaintiff's dial impulses and communications occurring on the prisoner telephones;" (4) nuisance due to the

---

[1] The Law Court has never recognized the spoliation of evidence as a cause of action. *Breen v. Lucas*, 2005 Me. Super. LEXIS 67, * 24; *Lawrence v. Mooers*, 2001 Me. Super. LEXIS 93, *2; *see also Gagne v. Jonsen, Inc.*, 298 F.Supp. 2d 145, 147–48 (D.Me. 2003) (discussing that the court resolves claims based on the alleged spoliation of evidence through evidentiary sanctions).

alleged interference with phone communications; and (5) assault and battery related to the pepper spray incident.[2]

The Defendants oppose Simpson's Motion to Amend his Complaint alleging the addition of parties and claims is untimely. However, the court permits Simpson's Second Amended Complaint. The court will rule on the Cross Motions for Summary Judgment that are presently before the court and allows Defendants to address the additional parties and claims in a later motion, if they should chose to do so.

The court addresses the Defendants' Motion, and Plaintiff's Cross Motion for Summary Judgment below.

## FACTUAL BACKGROUND

Jeffrey Simpson went into custody at the CCJ on October 9, 2003, where he remained until June 2004. Both of Simpson's claims arise from events that occurred while he was in custody at the CCJ.[3]

### 1. Facts of Alleged Telephone Recording

During the time that Simpson was in custody in the CCJ he requested to use a non-recorded telephone to call his attorney. He was advised that he could use the phone in the day room area of his cellblock to make a collect phone call.

---

[2] The exact dates Plaintiff's phone related tort claims occurred is not alleged. The pepper spray incident occurred on November 23, 2003. Plaintiff filed his Original Complaint on December 20, 2004. While this issue was not raised by the Defendants, the court notes that a claimant under the Maine Torts Claim Act must provide notice of a claim within 180 days after the claim accrues, or if later than 180 days and before the expiration of the statute of limitations, a claimant must show good cause why notice could not have reasonably been filed within the 180-day time limit. 14 M.R.S. § 8107(1). If a claimant fails to comply with the MTCA's notice provision, it can be a ground for summary judgment. *See, e.g., Pepperman v. Barrett*, 661 A.2d 1124 (Me. 1995).

[3] The CCJ is administered by the Cumberland County Sheriff's Department and is insured through the Maine County Commissioners Association Self-Funded Risk Management Pool.

3

Simpson requested further information about the phone system, and he was advised that further information would not be provided because it presented a security issue to the facility. Simpson claims that the CCJ's telephone system was capable of monitoring and recording prisoner phone conversations.[4] However, the exhibits referenced in Simpson's Response to the Defendants' Statement of Material Facts do not support Simpson's contention.[5] According to the Defendants, the CCJ did not have the ability to listen in on or record Simpson's phone calls when he was incarcerated.[6]

A now defunct company called T-NETIX designed the jail's phone system. The Maine County Jails obtained T-NETIX phones through its contract with Bell

---

[4] This case appears to be Simpson's second attempt to bring a claim against Cumberland County for alleged unlawful recording of phone calls. In *Simpson v. Cumberland County*, AP–04–17, Simpson filed an 80C Appeal in which he requested declaratory judgment that the defendants violated federal statutes 18 U.S.C.A. §§ 241, 2510–2520 & 3121 and his rights under the Fourth Amendment. The court granted the defendants' Motion to Dismiss because Simpson failed to exhaust his administrative remedies.

[5] The exhibits referenced by the Plaintiff support Defendants' claim that the Jail did not have the ability to record or monitor the telephone calls of its prisoners. The following evidence supporting the Defendants' argument is referenced in the exhibits attached to Plaintiff's Response to Defendants' Statement of Facts:

1. Mark Dion stated in response to Plaintiff's interrogatories that the jail can identify numbers called, but cannot identify who used the phone.
2. In Plaintiff's Exhibit II, there is a March 1, 2005 message from Genie Beaulieu to Michael Kelly regarding inmate phones, which states: "Verizon reports that the inmate phone units are so old that they do not have any information on them. They are called 'inmate mimi units" and the company who made the units is out of business. The units do not have recording ability . . . ."
3. While there is a brochure in Plaintiff's Exhibit II about the T-NETIX phone system, there is no indication that the CCJ actually had the relevant technology T-NETIX described as capable of recording and monitoring calls.
4. Sheriff Mark Dion states in his March 15, 2005 response to Plaintiff's interrogatories that the "telephone system does not provide monitoring capabilities," and later states "To my understanding, our system makes a record of the phone numbers called from the jail. It does not record calls."

[6] Major Francine Breton states in her affidavit that the jail did not have the capability to listen in on or record telephone calls at any time while Simpson was in the Cumberland County Jail's custody.

Atlantic from February 2000 to February 2005. The phones were replaced when the contract expired and the Maine County Jails entered into a new contract. Simpson claims that in removing the T-NETIX system the CCJ failed to preserve evidence relevant to his claims. In his affidavit, Simpson states that the CCJ's computerized telephone system monitored phone calls. He claims that at least eight of his phone calls were intercepted and stored through the jail's telephone system. Relying on the T-NETIX brochure, Simpson claims that the T-NETIX telephones had real time monitoring and recording capability, and that the phones also recorded the phone numbers of calls. Simpson appears to infer that the jail had the technology to record conversations (as detailed in the brochure) based on the following: (1) a response to a grievance appeal from Mark Dion, in which Dion says: "The computerized phone system is standard in all correctional facilities;" and (2) a prior experience in the Penobscot County Jail in 2002, in which his conversations were recorded and he was prosecuted for witness tampering based on the recorded telephone conversations.

### 2. Facts of Pepper Spray Incident

On November 23, 2003, according to the Defendants, Corrections Officers Brian Cummings and Daniel Haskell were working in the maximum-security area of the CCJ. While conducting a security check, Cummings saw inmate Robert Anthony jump down from his sink, and Cummings advised Anthony that he is not allowed to stand on the sink. Anthony began to yell obscenities. Cummings attempted to speak through the crack on the edge of the cell door to calm Anthony down. When Cummings did so, Anthony threw warm soup in Cummings face, and yelled more obscenities. Officer Haskell responded by going to the officer's station, where he grabbed handcuffs. Haskell then opened

the food chute, and ordered Anthony to stop yelling and put his hands through the food chute. Anthony continued to yell obscenities and refused to comply with the order to place his hands through the food chute. In response to Anthony's refusal and his continued disruptive behavior, Cummings sprayed a quarter second burst of oleoresin capsicum (pepper spray) into Anthony's cell through the food slot. Approximately five minutes later Anthony became compliant and Haskell and Cummings were able to place handcuffs on Anthony's wrists and take him to the shower.

Anthony was given 15 minutes to wash his eyes out and shower and he declined to be evaluated by medical staff. Cummings and Haskell continued to work the maximum-security shift afterwards, and they were unaffected by the fumes from the capsicum spray. No other inmates were exposed to the capsicum fumes from the spray and none of the other inmates requested to shower to rinse the spray, or requested medical attention. Officer Cummings stated in his affidavit that the use of the spray was reasonable because if Anthony's behavior were left unchecked it would escalate and potentially create a risk either to the inmate or to jail staff.

The Cumberland County Sheriff's Department Field Services Guide General Order No. 2–23 governs the use of oleoresin capsicum spray.[7] General Order No. 2–23 as well as pertinent sections of the training manual for the use of

---

[7] According to the Affidavit of Major Francine Breton, General Order No. 2–23 requires that employees are responsible for providing fresh air and water for flushing the eyes of any person sprayed with disabling pepper agents and that this will be done as soon as possible after the person is in proper custody. Employees are to monitor the health of any person sprayed with pepper spray, and medical attention will be provided should the person show any ill effects or show any unusual reaction to being sprayed with the disabling agent.

oleoresin capsicum (pepper spray) were attached to Mark Dion's March 15, 2005 response to Simpson's request for documents and interrogatories. General Order No. 2–23 permits the use of pepper spray to subdue a violently resisting subject or to deter a person engaged in riotous conduct. The training manual states that an officer should use two quarter second bursts of the pepper spray to subdue a person when in still air and at a distance of 4–6 feet, and it says that an officer should repeat until the desired effect occurs.

According to Simpson, his cell was directly adjacent to Robert Anthony's cell and the doors to their cells were sliding doors. Simpson says that he and Anthony were able to see each other through the crack of the doors. Simpson provides a different account of the events after Anthony threw the soup at Cummings. Simpson says that prior to attempting to handcuff Anthony, Officers Haskell and Cummings discharged the capsicum spray into Anthony's cell for four to five seconds in retaliation. Approximately five minutes later, Anthony became compliant and Haskell and Cummings handcuffed Anthony. Simpson says that Officers Haskell and Cummings, as well as the nurse, exhibited adverse effects from the spray, and he claims that the vapors were not confined to Anthony's cell. Simpson says that he and fellow prisoner Douglas Lafrance also suffered from the capsicum spray. He claims that when he and Lafrance requested medical attention as well, the nurse said there was nothing she could do. Haskell and Cummings ignored his complaints about the vapors, and Simpson says he suffered from the fumes for about two hours.

## DISCUSSION

### I.  Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c).  In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g.*, *Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704.  A contested fact is "material" if it could potentially affect the outcome of the suit under the governing law. *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.  A fact is "genuine" if there is sufficient evidence supporting the claimed fact to require a fact-finder to choose between competing versions of facts at trial. *Id.*  For the purposes of summary judgment, factual disputes and ambiguities must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

### II.  Simpson's Claims for Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress due to the Defendants' Alleged Recording and Monitoring of Phone Calls

In Counts II and III of his First Amended Complaint Simpson claims that the Defendants' alleged recording and monitoring of phone calls caused him to suffer great mental distress and mental anguish, and "severe distress of the mind and other diverse injuries."

In order to recover for a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct. *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, § 15, 711 A.2d 842, 847.

To make a claim for negligent infliction of emotional distress a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered emotional harm; and (4) the breach caused the plaintiff's harm. *Fass v. Wash. County*, 260 F. Supp. 2d 198, 208 (D. Me. 2003); see also *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25.

Simpson has not presented facts upon which relief can be granted. Simpson has failed to show (1) extreme and outrageous conduct necessary for a claim of intentional infliction of emotional distress or (2) a breach of duty by the Defendants necessary to sustain a claim for negligent infliction of emotional distress.

Simpson asserts in his affidavit that the CCJ has recording and monitoring capabilities. Simpson's claim appears to be based on a loose association of the following facts: (1) the T-NETIX brochure which details the technologies the company offers, including conversation recording and monitoring technology; (2) Mark Dion's response to a grievance appeal in which Dion states: "The computerized phone system is standard in all correctional facilities;" and (3) his

prior experience in the Penobscot County Jail, which did have phone conversation recording technology.

Aside from Simpson's speculative inference, there is no evidence that the CCJ recorded his phone calls, or had the same phone conversation recording technology as the Penobscot County Jail.[8] The evidence Simpson references in his Response to Defendant's Statement of Material Facts does not support his contention. As mentioned in footnote 3, the CCJ had the ability to monitor and record the phone numbers that were dialed,[9] but did not have the ability to monitor and record the conversations prisoners were having.[10] This is further supported by Major Francine Breton's affidavit, which states that the CCJ did not have the capability to listen in on or record telephone calls at any time while Simpson was in the CCJ's custody.

Because Simpson has not shown that the Defendants engaged in extreme and outrageous conduct, or breached a duty to the Plaintiff, the court grants Defendants' Motion for Summary Judgment on the claims of Intentional and Negligent Infliction of Emotional Distress.

---

[8] The United States Supreme Court provided guidance on the evidentiary standard for summary judgment in *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007). In *Scott v. Harris* the court explained: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* 550 U.S. at 380-81, 127 S. Ct. at 1776.

[9] The recording of the numbers dialed on a phone is a common business practice by phone companies for billing purposes, and does not appear to violate any federally protected rights. *See e.g., Gilday v. Dubois*, 124 F.3d 277, 290 (1st Cir. 1997). In *Gilday*, Massachusetts corrections officers were permitted to obtain call details related to an inmates use of the phone, including numbers dialed or the particular phone used. *Id.* 124 F.3d at 290-291.

[10] As a prisoner, Simpson does not have an unfettered right to use a prison phone on his own terms. A prisoner's right to telephone access is subject to rational limitations in the face of the prison's legitimate security interests. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994).

## III.     Simpson's Claim of Negligent use of the Pepper Spray

Simpson asserts a violation of the Maine Tort Claims Act, claiming that the Defendants' negligent use of pepper spray caused him to suffer physical pain. The Defendants assert municipal immunity on behalf of Cumberland County and discretionary immunity on behalf of the named individual defendants.

From the caption of Simpson's January 5, 2005 Complaint, it appears that Simpson attempted to sue Mark Dion, E.J. Burke, Wayne Pike, and Daniel Haskell in their individual capacities. However, Simpson has failed to articulate a basis for suing the named Defendants in their individual capacities. Under M.R. Civ. P. 8(a), "a pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief which the pleader seeks." Id. Because Simpson failed to state a basis for suit against the named Defendants in their individual capacities, the court only addresses the suit against the named Defendants in their official capacities as government employees.

The MTCA provides a broad grant of immunity to governmental entities. *Danforth v. Gottardi*, 667 A.2d 847, 848 (Me. 1995). Cumberland County is among the governmental entities covered by this grant of immunity. 14 M.R.S. §§ 8102(2)-(3). A governmental entity "is immune from suit unless the immunity is expressly removed by statute." Moreover, a government entity is not liable for any claim resulting from the performance of a discretionary function or duty. *Id.*

11

at § 8104-B(3). The County can be liable to the extent it procures insurance against claims against it waived by statute. *Id.* at § 8116.[11]

The County, although entitled to broad immunity, can be held liable for the acts of its employees for claims arising out of acts or occurrences within the course and scope of an employee's employment. *See Id.* at § 8112. Under 14 M.R.S. § 8111, government employees are also entitled to immunity for certain government related actions. "Employee" under the MTCA means "a person acting on behalf of a governmental entity in any official capacity." 14 M.R.S. § 8102. The corrections officers named in Simpson's suit were acting in their capacity as corrections officers at the CCJ and are government employees under the MTCA.

The Defendants assert that the corrections officers are entitled to discretionary immunity for claims arising out of their use of pepper spray. Government employees are absolutely immune from personal civil liability for "performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any [rule] under which the discretion is performed is valid." *Id.* at § 8111(1)(C). This absolute immunity is applicable whenever a discretionary act is reasonably encompassed by the duties of the government employees who are required to exercise judgment or discretion in performing their official duties. *Id.* at § 8111(1).

---

[11] "A governmental entity otherwise immune from suit waives its immunity to the extent it procures insurance." *Danforth v. Gottardi*, 667 A.2d 847, 848 (Me. 1995). 14 M.R.S. § 8116. Cumberland County has liability coverage under the Maine County Commissioners Association (MCCA) Self-Funded Risk Management Pool. The County's coverage under the MCCA excludes any claims from which immunity is provided under the MTCA. *See* Def's Ex. 1, MCCA Coverage Document, p. 33.

The officers engaged in two acts that require this court to determine if discretionary immunity applies. The first act was Officer Cummings' decision to use the pepper spray. The second was the corrections officers' response to Simpson's alleged complaints and requests for treatment following the use of the pepper spray on inmate Anthony.

The Law Court has adopted a four-factor test to determine whether discretionary immunity applies:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Roberts v. State*, 1999 ME 89, ¶ 8, 731 A.2d 855, 857 (citing *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987). The Law Court has granted discretionary immunity pursuant to the MTCA in the context of the care and custody of prison inmates. *Roberts*, at ¶ 9, 731 A.2d at 857. In applying the four factor test, the Law Court stated in *Roberts* that, "there can be no dispute that corrections is a basic governmental program and that the supervision of inmates is essential to a corrections program." *Roberts*, at ¶ 10, 731 A.2d at 857. Implicitly, the ability to control inmates is also essential to the administration of a corrections program. The use of pepper spray and the care CCJ officers are required to administer following the use of pepper spray are governed by the Cumberland County Sheriff's Department Field Services Guide General Order

13

No. 2–23. Through this regulation corrections officers are granted discretion in terms of when and how to use pepper spray.

As stated in the General Order No. 2–23, a corrections officer may use pepper spray to subdue a violently resisting inmate or to deter inmates from engaging in riotous conduct. Inmate Anthony violently resisted Officer Cummings' orders and was engaged in riotous conduct. Accordingly, Officer Cummings was authorized to use pepper spray to subdue inmate Anthony. Officer Cummings states in his affidavit that the use of the spray on Anthony was to prevent the situation from escalating and creating risk either to the inmate or to jail staff.

Turning to the manner in which the pepper spray was used, the training manual says that pepper spray should be discharged in two separate quarter second bursts to subdue a person at close distance, and that an officer should repeat the use of the spray until the desired effect occurs. A factual dispute exists regarding how long the pepper spray was used – Simpson claims it was discharged for four to five seconds, while Officer Cummings claims he discharged it for a single quarter second burst. However, this factual dispute is not material because the training manual permits the spray to be discharged "until the desired effects occur." Because the officers discharged the pepper spray until the desired effect occurred, such that Anthony was subdued, the total amount of time during which the spray was discharged is not material. The court finds that Officer Cummings actions are entitled to discretionary immunity with respect to the use of the pepper spray.

The court now turns to the care the officers and CCJ employees provided following the use of the pepper spray. The pepper spray training manual

14

provides: "Subjects who are sprayed should be exposed to fresh air and . . . should be allowed to use cool water (and soap if available) to rinse the oily resin from their skin. Encourage them to open their eyes and flush them with cool water. Ice may be applied if burning persists." Simpson contends that he should have been given care following the use of pepper spray on inmate Anthony. The court disagrees based on an examination of the above policy.

The court narrowly construes the requirement that inmates sprayed shall be provided care to mean the inmate that was directly sprayed. This is supported by the fact that the policy allows subjects sprayed "to rinse the oily resin from their skin," which implies "subjects" are those who are directly sprayed. If the policy were construed broadly as Simpson claims, then any inmate who remotely feels the effects of the pepper spray would be entitled to special care. Such a policy would hinder the officers' ability to supervise and control the jail because under a broad interpretation, any time pepper spray is discharged every inmate would be entitled to fresh air and water to flush their eyes. A broad interpretation of the policy would in effect deter officers from using pepper spray to supervise and control the jail and would be contrary to the intent of General Order No. 2-23. For this reason, the court finds that Haskell, Cummings, and other CCJ employees did not abuse their discretion in ignoring Simpson's alleged complaints and requests for treatment due to the pepper spray vapors. Simpson was not directly sprayed with the pepper spray. Therefore, they are entitled to the protections of discretionary immunity for their decision not to provide Simpson treatment.

## DECISION

Therefore, the entry is:

> Defendants' Motion for Summary Judgment on Plaintiff's claims of negligent and intentional infliction of emotional distress related to alleged phone recording is GRANTED.

> Defendants' Motion for Summary Judgment on Plaintiff's MTCA claim for negligence with regard to the use of pepper spray is GRANTED.

> Defendants' Motion for Summary Judgment on the Plaintiff's MTCA claim for negligence with regard to the denial of treatment for the use of pepper spray is GRANTED.

> Plaintiff's Motion for Summary Judgment is DENIED.

Dated at Portland, Maine this ___23rd___ day of ___November___, 2009.

Robert E. Crowley
Justice, Superior Court

16

COURTS
nd County
ox 287
ie 04112-0287

JEFFREY SIMPSON #04394-036
LEWISBURG USP
PO BOX 1000
LEWISBURG PA 17837

COURTS
id County
ox 287
e 04112-0287

PETER MARCHESI ESQ
WHEELER & AREY
PO BOX 376
WATERVILLE ME 04903-0376

COURTS
nd County
ox 287
ie 04112-0287

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-765

*N M   -CUM  4/5/2011*

JEFFREY SIMPSON,

Plaintiff

v.

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

CUMBERLAND COUNTY,
et al.,

Defendants

STATE OF MAINE
Cumberland ss. Clerk's Office

APR 07 201

RECEIVED

Before the court is the motion for summary judgment filed by the defendants, Cumberland County, Mark Dion, E.J. Burke, Wayne Pike, Daniel Haskell, Brian Cummings, Peter Crichton, and Francine Breton. The defendants move for summary judgment in their favor on the plaintiff's second amended complaint pursuant to M.R. Civ. P. 56. The plaintiff did not file an opposition to the defendants' motion. For the following reasons, the motion is granted.

BACKGROUND

The following undisputed facts are taken from the Defendants' statement of material facts. On October 9, 2003, the plaintiff was accepted into custody at the Cumberland County Jail. (Defs.' S.M.F. ¶ 1.) The plaintiff remained in custody at the Cumberland County Jail until June 2004. (Id. ¶ 2.) During the time that the plaintiff was housed at the Cumberland County Jail, he submitted a request to use a non-recorded telephone for an attorney call. (Id. ¶ 3.) The plaintiff was advised that he could use the telephone in the day room area of his cellblock to make the call. (Id. ¶ 4.)

1

He was also advised that further information on the telephone system would not be provided as it presented a security issue for the facility. (Id. ¶ 5.) The Cumberland County Jail did not have the capability to listen to, or record, telephone calls at any time in which the plaintiff was incarcerated in the Cumberland County Jail. (Id. ¶ 6.) Cumberland County and the Cumberland County Jail have never listened to, or recorded, any telephone conversation of the plaintiff while incarcerated in the Cumberland County Jail. (Id. ¶ 7.) The phone system recorded the phone numbers that were dialed from the phones in the jail. (Id. ¶ 29.) The phone system did not record which inmate was making the phone call. (Id. ¶ 30.)

On November 23, 2003, at approximately 5:45 p.m., Officers Brian Cummings and Daniel Haskell were working in the maximum-security area of the Cumberland County Jail. (Id. ¶ 8.) While conducting a security check at 5:45 p.m., defendant Cummings saw Robert Anthony, an inmate, jump down from his sink. (Id. ¶ 9.) Officer Cummings informed Mr. Anthony that he was not allowed to stand on his sink. (Id.) Mr. Anthony began yelling obscenities and hitting his cell window. Officer Cummings attempted to use the crack on the edge of the cell door to calm Mr. Anthony down, and when he did so, Mr. Anthony threw warm soup in Officer Cummings's face. (Id. ¶ 10.) Mr. Anthony continued to yell obscenities and began to throw things at his cell door. (Id. ¶ 11.)

Officer Haskell went to the officer's station and grabbed handcuffs. (Id. ¶ 12.) Officer Haskell opened the food chute and ordered Mr. Anthony to stop yelling and put his hands through the chute. Mr. Anthony continued to yell obscenities and threats and refused to put his hands through the chute. (Id. ¶ 13.) In response to Mr. Anthony's actions, Officer Cummings sprayed a one forth second burst of oleoresin capsicum spray into Mr. Anthony's cell through the food chute. (Id. ¶ 14.) The use of the spray

2

was limited to the one short blast and was confined to Mr. Anthony's cell. (Id. ¶ 18.) The use of the spray was necessary because Mr. Anthony would not comply with orders from either Officer Cummings or Officer Haskell, who were concerned that if Mr. Anthony's behavior were left unchecked it would escalate and potentially create a risk to Mr. Anthony or the jail staff. (Id. ¶ 19.)

Approximately five minutes later, Mr. Anthony became compliant and Officers Haskell and Cummings were able to place handcuffs on his wrists and take Mr. Anthony to the shower. (Id. ¶ 15.) The officers gave Mr. Anthony fifteen minutes to wash his eyes out. The officers asked Mr. Anthony if he wanted to be evaluated by medical staff. (Id. ¶ 16.) Mr. Anthony declined. (Id.)

Officers Cummings and Haskell continued to work in the maximum-security area after the incident and had no problem with fumes from the spray. (Id. ¶ 17.) No other inmates in the maximum-security area were exposed to the spray or the fumes of the spray. (Id. ¶ 20.) No other inmates in the maximum-security area requested access to a shower to rinse off any spray or for medical attention due to exposure to the fumes from the spray. (Id. ¶ 21.)

The Cumberland County Jail is the only correctional facility in the State of Maine that is accredited with the American Correctional Association ("ACA"). (Id. ¶ 22.) The Maine County Commissioners Association Self-Funded Risk Management Pool ("Risk Pool") is a public self-funded pool established pursuant to Title 30-A, Chapter 117 of the Maine Revised Statutes to provide risk management and coverage for pool members. (Id. ¶ 23.) Cumberland County is a Named Member of the Risk Pool and is provided with insurance-type coverage pursuant to a document titled "Maine County Commissioners Association Self-Funded Risk Management Pool Coverage Document" ("Coverage Document"). (Id. ¶ 24.) Coverage under the Risk Pool's Coverage

3

Document extends to Cumberland County only for risks enumerated in the Coverage Document and does not extend to those risks not enumerated or for which affirmative language in the Coverage Document specifically excludes coverage. (Id. ¶ 25.)

The plaintiff filed a complaint against defendant Cumberland County on December 20, 2004. The plaintiff alleged that while housed in the Cumberland County Jail, his telephone calls were illegally recorded and he was exposed to oleoresin capsicum spray fumes. The plaintiff filed an amended complaint on January 5, 2005 against defendants Cumberland County, Mark Dion, E.J. Burke, Wayne Pike, Daniel Haskell, and an unknown officer based on the same allegations. On November 23, 2005, the defendants filed a motion for summary judgment. On December 22, 2005, the plaintiff filed a cross-motion for summary judgment.

On December 9, 2005, the plaintiff filed a motion to amend his complaint. In his second amended complaint, the plaintiff added defendants Brian Cummings, Peter Crichton, Francine Breton, and Nancy Vigue.[1] The second amended complaint[2] includes the following eight claims:

- Count I – 15 M.R.S. § 711
- Count II – Fraud
- Count III – Spoliation of Evidence
- Count IV – Invasion of Privacy
- Count V – Assault and Battery
- Count VI – Negligence (exposure to the spray fumes)
- Count VII – Negligence (recording of telephone conversations)
- Count VIII – Nuisance

By order dated November 23, 2009, the court granted summary judgment in favor of the defendants on the first amended complaint and denied the plaintiff's

---

[1] Ms. Vigue is not a county employee and is not represented by the counsel for the defendants. The defendants claim that the plaintiff never served Ms. Vigue with the amended complaint.

[2] The palintiff did not designate which claims were brought against which defendants, but in the amended complaint, the plaintiff does not allege that Daniel Haskell or Brian Cummings were involved with recording Mr. Simpson's phone calls.

4

motion for summary judgment. The court granted the plaintiff's motion to amend his complaint. On October 13, 2010, the defendants filed a motion for summary judgment on all counts in the second amended complaint. The plaintiff filed no opposition to the defendants' motion.

DISCUSSION

A. Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the nonmoving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See, e.g., Johnson v. McNeil, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. A contested fact is "material" if it could potentially affect the outcome of the case. Inkel v. Livingston, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." Id. When the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

Once a properly supported motion is filed, the party opposing a summary judgment must show that a factual dispute exists sufficient to establish a prima facie case for each element of the claim or defense in order to avoid a summary judgment. Watt v. Unifirst Corp., 2009 ME 47, ¶ 21, 969 A.2d 897, 902; Reliance Nat'l Indem. v. Knowles Indus. Servs., 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. "Failure to properly respond to a statement of material facts permits a court to deem admitted any

5

statements not properly denied or controverted." Dyer v. Dep't of Transp., 2008 ME 106, ¶ 15, 951 A.2d 821, 825-26; M.R. Civ. P. 56(h)(4).

B. Claims Against the Defendants in Their Individual Capacity

### Count I – 15 M.R.S. § 711

Title 15, section 711 of the Maine Revised Statutes governing interception of wire and oral communications provides: "Any party to a conversation intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses such communications and shall be entitled to recover from any such persons." 15 M.R.S. § 711 (2010). "'Intercept' means to hear, record or aid another to hear or record the contents of any wire or oral communication through the use of any intercepting device." 15 M.R.S. § 709(4) (2010). "'Contents,' when used with respect to any wire or oral communication, means any information concerning the identity of the parties to such communication or the existence, contents, substance, purport or meaning of that communication." 15 M.R.S. § 709(2) (2010).

The defendants did not have the capability to listen to, or record, the substance of the inmates' phone calls. (Defs.' S.M.F. ¶¶ 6, 7.) The defendants recorded the phone numbers dialed, but did not have information about which inmate made the call. (Id. ¶¶ 29-30.) Recording the phone numbers dialed is common for billing purposes and does not appear to violate any federally protected rights. See Gilday v. Dubois, 124 F.3d 277, 290 (1st Cir. 1997) (interpreting the Massachusetts Wiretap Act, which tracts the Federal Wiretap Act).

### Count II – Fraud

The plaintiff alleges that the defendants committed fraud by "surreptitiously utilizing a pen register and interception device" to unlawfully obtain information. (Compl. ¶ 25.) "To sustain a fraud claim, a party must show: (1) that the other party

6

made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing him to act in reliance upon it, and (5) he justifiably relied upon the representation as true and acted upon it to his damage." Guiggey v. Bombardier, 615 A.2d 1169, 1173 (Me. 1992). "When a plaintiff alleges not an affirmative false statement, but rather a failure to disclose rising to the level of a misrepresentation, the plaintiff must prove either (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose." Tobin v. Casco N. Bank, 663 A.2d 1, 2 (Me. 1995).

There is no genuine issue of material fact with respect to any active concealment by the defendants. Though the defendants did not provide information about their phone system to the plaintiff, the phone system could not record the plaintiff's telephone calls. (Defs.' S.M.F. ¶¶ 5, 29-30.) Further, there is no genuine issue of material fact with respect to any confidential or fiduciary relationship that existed between the plaintiff and the defendants that would have required the defendants to disclose its phone system's capabilities.

Count III – Spoliation of Evidence

The Law Court has never recognized spoliation of evidence as a separate cause of action. Breen v. Lucas, 2005 Me. Super. LEXIS 67, *24 (Me. Super. Jul. 4, 2005); Butler v. Mooers, 2001 Me. Super. LEXIS 93, *2 (Me. Super. Jun. 15, 2001); Gagne v. D.E. Jonsen, Inc., 298 F. Supp. 2d 145, 147-48 (D.Me. 2003) (stating that the remedy for spoliation of evidence is sanctions upon the offending party).

Count IV – Invasion of Privacy

The plaintiff alleges that the defendants are liable for intruding upon his seclusion. (Compl. ¶ 31.) '"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to

7

liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" Nelson v. Maine Times, 373 A.2d 1221, 1223 (Me. 1977) (quoting Restatement (Second), Torts § 652A). Incarcerated persons have a lesser expectation of privacy. See Bell v. Wolfish, 441 U.S. 520, 545-46 (1979) ('"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."') (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). Additionally, it is not highly offensive to record the telephone numbers dialed from a phone, which is a standard billing practice for telephone companies. Gilday, 124 F.3d at 290.

## Count V – Assault and Battery

The plaintiff claims that defendants are liable for assault and battery[3] because defendant Cummings sprayed oleoresin capsicum spray on another inmate knowing that it would cause the plaintiff to suffer injuries. (Compl. ¶ 34.) Defendants Haskell and Cummings assert that they are entitled to discretionary function immunity under 14 M.R.S. § 8111(1)(C) on all of the plaintiff's tort law claims.

The Maine Tort Claims Act governing discretionary function immunity states, in relevant part:

> Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
> . . .
> > C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid

---

[3] "A battery may be committed by a mere touching of another." Richards v. Town of Eliot, 2001 ME 132, ¶ 31 n. 8, 780 A.2d 281, 292 n. 8 (citing Jack H. Simmons et al., MAINE TORT LAW § 1.01 (2001)). "Law enforcement officials, however, are immune from liability from such touching within the scope of their discretion." Id.

8

. . .

> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees, including police officers and governmental employees involved in child welfare cases, who are required to exercise judgment or discretion in performing their official duties.

14 M.R.S. § 8111(1) (2010). The Law Court applies a "four-factor test to determine whether discretionary function immunity applies.

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?"

Roberts v. State, 1999 ME 89, ¶ 8, 731 A.2d 855, 857 (quoting Adriance v. Town of Standish, 687 A.2d 238, 240 (Me. 1996) (quotation omitted)). '"[T]he management and care of prisoners is a discretionary function.'" Roberts, 1999 ME 89, ¶ 9, 731 A.2d at 857 (quoting Erskine v. Comm'r of Corr., 682 A.2d 681, 686 (Me. 1996)).

Considering these four factors, the actions of defendants Haskell and Cummings with regard to the capsicum spray were discretionary. Their actions were taken in furtherance of corrections, which is a "basic governmental program"; the "supervision of inmates is essential to a corrections program." Roberts, 1999 ME 89, ¶ 10, 731 A.2d at 857. Inmate Robert Anthony, who was located in a cell next to the plaintiff, was sprayed because Mr. Anthony was causing a disturbance and would not calm down. (Defs.' S.M.F. ¶¶ 10-11.) Mr. Anthony would not allow defendant Cummings to handcuff him and continued to cause disruptions. (Id. ¶ 13.) Mr. Anthony became

9

compliant only after defendant Cummings sprayed one short burst of capsicum spray. (Id. ¶¶ 14, 18.) Defendants Haskell and Cummings used their judgment and expertise to determine and utilize the best method to control Mr. Anthony's behavior, which was within their authority as corrections officers.

Count VI – Negligence (exposure to capsicum spray fumes)

In count VI, the plaintiff alleges that the defendants Haskell and Cummings were negligent in denying "available treatment to prisoners whom suffer collateral effects from oleoresin capsicum spray" and, as a result, the plaintiff suffered "multiple traumas for a period of nearly 2 hours."[4] (Compl. ¶¶ 37-38.) To establish a prima facie case for negligence, a plaintiff must show four elements: duty, breach, causation, and damages. Mastriano v. Blyer, 2001 ME 134, ¶ 11, 779 A.2d 951, 954. "The existence of a duty of care is a question of law." Reid v. Town of Mt. Vernon, 2007 ME 125, ¶ 14, 932 A.2d 539, 544.

For the same reasons stated above, Officers Haskell and Cummings are entitled to discretionary function immunity for any tort claim arising out of their use of capsicum spray, including negligence.

Count VII – Negligence (recording of telephone conversations)

In count VII, the plaintiff appears to allege a claim for negligent infliction of emotional distress. The plaintiff claims that the defendants' alleged interception of his telephone calls caused him "to suffer sever emotional distress" manifesting in physical symptoms. (Compl. ¶ 41.)

---

[4] The court previously held that the defendants listed in the plaintiff's first amended complaint, including defendant Haskell, were entitled to discretionary function immunity on the plaintiff's claim that the defendants negligently exposed him to capsicum spray. Simpson v. Cumberland County, et al., CV-2004-765, at 15 (Me. Super. Ct., Cum. Cty., Dec. 1, 2009) (Crowley, J.).

10

In order to state a claim for negligent infliction of emotional distress, "a plaintiff must set forth facts from which it could be concluded that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." Curtis v. Porter, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. 784 A.2d 18, 25. Plaintiffs "face a significant hurdle in establishing the requisite duty," because a "general duty to avoid negligently causing emotional harm to others" does not exist. Id. The "limited circumstances" in which an individual has such a duty are either in "bystander liability actions" or when "a special relationship exists between the actor and the person emotionally harmed." Id. ¶ 19, 784 A.2d at 25. The plaintiff alleges nothing that would give rise to the limited circumstances in which a duty exists. Compare id. ¶ 19 n. 16, 784 A.2d at 25 n. 16 (bystander liability); Bryan R. v. Watchtower Bible & Tract Soc'y, Inc., 1999 ME 144, ¶ 31, 738 A.2d 839, 848 (special relationship).

Count VIII – Nuisance

"Nuisance claims require proof of a substantial, unreasonable interference with the use and enjoyment of land." Darney v. Dragon Prods. Co., LLC, 2010 ME 39, ¶ 14 n. 3, 994 A.2d 804, 807 n. 3 (citing Charlton v. Town of Oxford, 2001 ME 104, ¶ 36, 774 A.2d 366, 377 & n. 10)). The plaintiff's claims do not relate to his use and enjoyment of land.

C. Claims Against the Defendants in Their Official Capacity

Pursuant to the Maine Tort Claims Act, government entities are immune from suit on tort claims unless the Act expressly removes immunity. 14 M.R.S. § 8103(1) (2010); Danforth v. Gottardi, 667 A.2d 847, 848 (Me. 1995). There are two provisions of the Act that provide exceptions to the immunity of a municipality. The first provides exceptions for (1) the ownership, maintenance, or use of vehicles, machinery, and

11

equipment; (2) the construction, operation or maintenance of a public building; (3) the

discharge of pollutants;[5] and (4) road construction, street cleaning or repair. 14 M.R.S. §

8104-A (2010). None of these exceptions is applicable to this case.

Additionally, section 8116[6] provides that a government entity waives its

immunity when it obtains insurance coverage for an activity for which it is immune. 14

M.R.S. § 8116 (2010). Cumberland County has the burden of establishing that it did not

waive its immunity by procuring insurance coverage. Moore v. Lewiston, 596 A.2d 612,

615 (Me. 1991).

Cumberland County and the other defendants in their official capacities are

insured through the Risk Pool. (Defs.' S.M.F. ¶ 24.) However, the claims in the

plaintiff's complaint against defendant Cumberland County are excluded from

coverage under the Coverage Document Section III-Casualty Coverage by the following

language:

> For all causes of action seeking tort damages pursuant to the provisions of
> the Maine Tort Claims Act, 14 M.R.S.A. § 8101, et seq. Coverage
> hereunder shall not be deemed a waiver of any immunities or limitations
> of damages available under the Maine Tort Claims Act, other Maine
> statutory law, judicial precedent, or common law.

> Coverage is limited to those areas for which governmental immunity has
> been expressly waived by 14 M.R.S.A. § 8104-A and limited by 14
> M.R.S.A. § 8104-B and 14 M.R.S.A. § 8111.

---

[5] This exception only applies to negligent discharge of pollutants. See 14 M.R.S. § 8104-A(3)
(2010). In this case, the officers discharged the pepper spray intentionally. (Defs.' S.M.F. ¶ 14.)
Therefore, this exception does not apply.
[6] Section 8116 provides, in relevant part:
> The legislative or executive body or any department of the State or any political
> subdivision may procure insurance against liability for any claim against it or its
> employees for which immunity is waived under this chapter or under any other
> law . . . . If the insurance provides coverage in areas where the governmental
> entity is immune, the governmental entity shall be liable in those substantive
> areas but only to the limits of the insurance coverage . . . .
14 M.R.S. § 8116 (2010).

12

(Id. ¶ 26.) In addition to the exclusions and other affirmative language in the Coverage Document negating coverage for the plaintiff's claims, the Risk Pool provided to Cumberland County separate Member Coverage Certificate covering the period from January 1, 2003 to December 31, 2004. (Id. ¶ 27.) The Certificates reiterate the limits of liability for torts and contain the following language limiting coverage:

> Coverage is limited to those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. § 8104-A and limited by 14 M.R.S.A. § 8104-B and 14 M.R.S.A. § 8111 . . . Liability coverage shall not be deemed a waiver of any immunities or limitation of damages available under the Maine Tort Claims Act, other Maine statutory law, judicial precedent, or common law.

(Id.) "[T]his disclaimer is sufficient to avoid a waiver of immunity pursuant to section 8116." City of Old Town v. Dimoulas, 2002 ME 133, ¶ 25, 803 A.2d 1018, 1025.

Other than insurance type coverage provided to Cumberland County under the Risk Pool's Coverage Document, Cumberland County has not procured insurance against liability for any claim against the county or its employees for which immunity is not otherwise waived under the Maine Tort Claims Act. (Defs.' S.M.F. ¶ 28.)

The entry is

> The Defendants' Motion for Summary Judgment is GRANTED. Judgment is entered in favor of the Defendants Cumberland County, Mark Dion, Ernest Burke, Wayne Pike, Daniel Haskell, Brian Cummings, Peter Crichton, and Francine Breton and against the Plaintiff Jeffrey Simpson on Counts I-VIII of the Plaintiff's Second Amended Complaint.
>
> The Plaintiff Jeffrey Simpson's Second Amended Complaint Dismissed as to Defendant Nancy Vigue.

Date: April 1, 2011

Nancy Mills
Justice, Superior Court

13

)URTS
ounty
Ground Floor
)4101

PETER MARCHESI ESQ
WHEELER & AREY
PO BOX 376
WATERVILLE ME 04903-0376

COURTS
d County
et, Ground Floor
)E 04101

JEFFREY SIMPSON
LEWISTBURG USP
PO BOX 1000
LEWISBURG PA 17837