1998 ME 79

**Rhonda COLLOMY, Individually and as Mother and Next Friend of Trevor Carter**

v.

**SCHOOL ADMINISTRATIVE DISTRICT NO. 55.**

Supreme Judicial Court of Maine.

Argued Feb. 3, 1998.

Decided April 22, 1998.

Paul F. Macri (orally), Tyler N. Kolle, Berman & Simmons, P.A., Lewiston, for plaintiffs.

David P. Very (orally), Norman, Hanson & DeTroy, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

WATHEN, Chief Justice.

[¶ 1] Plaintiff Rhonda Collomy, individually and as mother and next friend of Trevor Carter, appeals from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of defendant School Administrative District No. 55 (the School District). Plaintiff argues on appeal that the court erred in failing to find a genuine issue of material fact whether Trevor was a trespasser; whether the School District owed Trevor a duty of care under the attractive nuisance doctrine; and whether the School District acted willfully, wantonly or recklessly. Finding no error, we affirm.

[¶ 2] The facts, viewed in the light most favorable to plaintiff, may be summarized as follows: On a Saturday morning in early June, Trevor Carter, a 12–year–old boy, and his 12–year–old friend, together with his friend's younger siblings, were dropped off at the playground of Baldwin Elementary School by his friend's father. Trevor believed that he had a little league game at the school that morning, but discovered later that the game was at a different school. While waiting, Trevor and his friend played soccer on the field and played on the jungle gym and the swings on the playground.

[¶ 3] After awhile, they became curious and entered a cinder block shed adjacent to the playground. The shed had two doors, a steel door secured by a large padlock, and a hollow core wooden door secured by an integrated lock and a smaller padlock and hasp. The boys entered through the wooden door that Trevor testified was unlocked and ajar. His friend found a can of fluid, later identified as duplicating fluid, took it outside and set it on fire. His friend and his friend's siblings played with the fire, while Trevor sat on the swings and did not participate. When his friend wanted to go play soccer, Trevor was concerned about the fire catching onto the trees or something else and recommended that they stay until the fire was out. When the fire was out, Trevor went back into the building because it was cooler. His friend then took more of the duplicating fluid and this time half-filled the cinder block step in the doorway and tried to ignite it. The fluid did not ignite on the first try and his friend put more fluid into the block. Trevor told his friend not to do it and that he was going to get out of the building. When Trevor began to leave, his friend threw another match into the block, the fluid ignited, flashed back, and ignited Trevor's clothes, causing burns to his lower extremities.

[¶ 4] Rhonda Collomy, individually and as mother of Trevor, filed a complaint against the School District alleging that the School District stored highly flammable substances in a negligently constructed, operated, or

maintained storage shed on property adjacent to the playground and, as a direct and proximate result, plaintiff sustained injuries. After hearing, summary judgment was entered in favor of the School District and plaintiff appealed.

[¶ 5] We review the court's "entry of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered." *Rodrigue v. Rodrigue,* 1997 ME 99, ¶ 8, 694 A.2d 924, 926 (citation omitted). Summary judgment will be upheld if the evidence produced demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

## I. Trespass

■ [¶ 6] Plaintiff first argues that there is a genuine issue of material fact whether Trevor was a trespasser. The duty owed to Trevor is dependent upon his legal status and the determination of his legal status is an issue of fact. *Poulin v. Colby College,* 402 A.2d 846, 849 (Me.1979). A trespasser is defined as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (1965); *see also Cogswell v. Warren Bros. Road Co.,* 229 A.2d 215, 219 (Me.1967). It is undisputed that the playground, the shed and the contents of the shed were in the possession of the School District and that Trevor entered the playground and the shed. It is also agreed that Trevor was not a trespasser on the playground, because children often played on the playground and fields when school was not in session.

■ [¶ 7] Even though it may be agreed that Trevor was an invitee and not a trespasser on the playground, however, that status applies "only while he is on the part of the land to which his invitation extends—or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come." Restatement (Second) of Torts, § 332, comment *l* (1965). For example, "where one enters a part of premises reserved for the use of the occupant and his employees and to which there was no express or implied invitation to go, there can be no recovery for resulting injury, even though he is an invitee to other parts of the premises." *Lewis v. Mains,* 150 Me. 75, 77–78, 104 A.2d 432, 434 (1954) (although defendant invited a father to come upon his land and erect a home for himself and his family, he did not invite the father's child to enter an area obviously devoted to commercial uses and climb a sawdust pile at the sawmill on the same property, where she touched an electric wire and was injured).

■ [¶ 8] Contrary to plaintiff's attempt to distinguish *Lewis v. Mains,* the shed did have a different use than the playground equipment, such as swings and monkey bars. The swings and monkey bars were on the premises for students to play on during school and the School District gave children, including Trevor, reason to believe that their presence was also permitted for the purpose of playing on the playground equipment when the school was not in session. The School District, however, used the shed to store equipment and materials and plaintiff introduced no evidence that the School District allowed the children to play in the building when school was in session or when it was not. Therefore, the court did not err in finding that plaintiff failed to raise a genuine issue of material fact whether Trevor was a trespasser when he entered the shed.

## II. Attractive Nuisance

[¶ 9] Plaintiff next argues that, even if Trevor was a trespasser when he entered the cinder block shed, there is a genuine issue of material fact whether the School District owed him a duty under the attractive nuisance doctrine. In *Jones v. Billings,* 289 A.2d 39 (Me.1972), we adopted the following definition of the attractive nuisance doctrine:

Sec. 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Jones v. Billings*, 289 A.2d 39, 42 (Me.1972) (quoting Restatement (Second) of Torts § 339 (1965)).

[¶ 10] We adopted the attractive nuisance doctrine with the caveat that we would strictly interpret the doctrine, *Id.* at 43, and we applied a strict interpretation in *Merrill v. Central Maine Power Co.*, 628 A.2d 1062, 1063 (Me.1993). In affirming the court's summary judgment in favor of the defendant, we focused on whether the child appreciated the risk at the time of the accident and noted one commentator's statement that:

[t]he child, because of his immaturity, either must not discover the condition or must not in fact appreciate the danger involved. Since the principal reason for the rule distinguishing trespassing children from trespassing adults is the inability of the child to protect himself, the courts have been quite firm in their insistence that if the child is fully aware of the condition, understands the risk which it carries, and is quite able to avoid it, he stands in no better position than an adult with similar knowledge and understanding.

*Merrill*, 628 A.2d at 1063–64 (citing W. Keeton, *Prosser and Keeton on the Law of Torts* § 59 at 408 (5th ed.1984) (footnotes and citations omitted)). We also recognized that

" '[o]ften the child's own testimony is the best evidence of whether he possessed sufficient intelligence and knowledge to understand or avoid the danger." *Merrill*, 628 A.2d at 1064 (quoting *Lister v. Campbell*, 371 So.2d 133, 136 (Fla.Dist.Ct.App.1979)). Based on these principles, we found in that case that it was undisputed that the child appreciated the risk inherent in placing an eel on a live electrical wire.

[¶ 11] This case also focuses on the third element, that is, whether Trevor appreciated the risk. We must consider at what point he should have appreciated the risk—when he entered the building the first time or when he entered the building the second time. Plaintiff focuses on the initial entry into the shed and argues that there is a genuine issue of material fact whether Trevor appreciated the risk of entering the cinder block shed and the dangers of the materials therein and that this issue is sufficient to deny summary judgment. Trevor testified that, before entering the building the first time, he thought it was okay to play on the playground, and that he thought it was okay to enter the building because it was unlocked. Trevor also testified that, at the time he saw the cans, he did not see that the cans had writing that said they were flammable, but that his friend told him about the labels after the accident. Viewing Trevor's testimony in the light most favorable to him, there is an issue of fact whether he appreciated any risk when he entered the building the first time. Trevor's understanding at the time of the first entry, however, is not material because he was not injured at that point in time.

[¶ 12] The determinative period of time for appreciating the risk was when Trevor chose to enter the building the second time, because this is when the accident occurred. Before entering the building the second time he had the knowledge (1) that there were flammable materials in the building and (2) that his friend had already ignited the materials once. He stated that he went back into the building because it was cooler. He acknowledged, however, that a teacher might ask him to leave. Asked why, he responded "because it's not really that safe a place to be in." Asked why again, he responded "be-

cause of the flammable liquids." Asked "and you knew that when went back in," he answered "right."

[¶ 13] He also admitted that he knew fire could hurt you and burn you. He admitted that he knew it was dangerous to play with fire, but that he did not believe that his friend understood it was dangerous. He testified that he had observed the effects of flammable fluids when his friend threw the match in the first time. He also admitted that he understood it was dangerous and that someone could get hurt. He testified that he never touched the cans or matches. To the question "you were worried it would explode," he responded, "right." He testified that, when his friend poured more fluid into the step, he said, "I'm going to get up and get out," and that when he started walking out, his friend threw a match and the fluid ignited.

[¶ 14] Even viewed in the light most favorable to plaintiff, the evidence unequivocally reveals that Trevor appreciated the dangers before re-entering the building. Although Trevor clearly did not anticipate that his friend would throw a match onto the fluid while he was trying to leave the building, he did know that the fluid was in the building, that his friend would play with the fluid, that the fluid was flammable, and that the flammable fluid could hurt or burn him. Therefore, because plaintiff failed to generate a genuine issue concerning an indispensable element of the attractive nuisance doctrine, she was conclusively precluded from recovery under this doctrine.[1] Thus the court did not err in granting the School District's summary judgment on this theory of recovery.

III. Wanton, willful and reckless conduct

[¶ 15] Because we determine that Trevor was a trespasser and was not within the attractive nuisance doctrine, the duty owed to Trevor is only a duty to refrain from wanton, willful or reckless acts of negligence. See Cogswell v. Warren Bros. Road Co., 229 A.2d 215, 219 (Me.1967). Even viewed in the

light most favorable to the plaintiff, the School District's acts of leaving flammable materials in the cinder block building on the playground, leaving the door unlocked, and failing to post warning signs on the property do not rise to the level of "wanton, willful or reckless behavior." See Lewis v. Mains, 150 Me. 75, 78, 104 A.2d 432, 434 (1954); Bonney v. Canadian Nat'l Ry. Co., 800 F.2d 274, 278 (1st Cir.1986). Therefore, the court did not err in finding that plaintiff failed to generate a genuine issue of material fact whether the School District acted wantonly, willfully, or recklessly.

The entry is:

Judgment affirmed.

---

1. Because plaintiff must prove a prima facie case for each element of the cause of action, we need not discuss the other four elements of the attractive nuisance doctrine. *Rodrigue v. Rodrigue,* 1997 ME 99, ¶ 8, 694 A.2d 924, 926; *Merrill v. Central Maine Power Co.,* 628 A.2d 1062, 1063 n. 3 (Me.1993).