2005 ME 42

**Leonard R. INKEL**

v.

**Donald LIVINGSTON et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 9, 2004.

Decided: March 22, 2005.

Daniel J. Mitchell, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiff.

Thomas S. Marjerison, Esq., Norman, Hanson & DeTroy, LLC, for Donald Livingston.

Gerard O. Fournier, Esq., Portland, for Solid Rock Builders.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Leonard R. Inkel appeals from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) in favor of Donald Livingston and Solid Rock Builders. Inkel contends that the court erred in finding that he had exceeded the scope of his invitation as a social guest when he suffered injuries upon entering a partially constructed house on Livingston's property. We disagree and affirm the judgment.

## I. CASE HISTORY

[¶ 2] Donald Livingston hired Solid Rock Builders to build an ocean-front home on his property in Cape Neddick. During construction, Livingston lived in a cottage located forty-two feet away from the site of the new house. Livingston invited Inkel and his family to join him and other guests for Easter dinner at his cottage. Inkel, accompanied by his adult son, went outside for a cigarette after dinner. It was approaching dusk, and it was cloudy and raining. As he smoked, Inkel and his son walked toward the shore, in the direction of the new home. There were no lights on in the new home. At that time, some of the home's walls had been erected, but the construction remained incomplete. Curious about one of its rooms, the two men entered the dimly lit, partially enclosed structure. After walking ten to twenty feet, Inkel fell eight to ten feet through an uncovered chimney hole, suffering injuries. Prior to going outside, Inkel did not inform Livingston that he was going to look at the new house, and Livingston was not actually aware that he was doing so. Livingston was aware, however, that the other

guests had gone in and out of the cottage during the dinner.

[¶ 3] Inkel brought a negligence action against Livingston and Solid Rock. Both defendants filed motions for summary judgment, which the trial court granted. The court found that Inkel's status was that of an invitee inside the cottage and on the surrounding grounds, but that the scope of Inkel's invitation did not extend, either expressly or impliedly, to the new house. This appeal followed.

## II. DISCUSSION

[¶ 4] "We review the grant of a motion for summary judgment de novo ... consider[ing] the evidence and reasonable inferences that may be drawn from the evidence in the light most favorable to the party against whom the summary judgment has been granted in order to determine if the parties' statements of material facts and referenced record evidence reveal a genuine issue of material fact." *Lever v. Acadia Hosp. Corp.,* 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179 (citation omitted). "A material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever,* 2004 ME 35, ¶ 2, 845 A.2d at 1179.

[¶ 5] Maine has abolished the common law distinctions between licensees and invitees and, accordingly, under Maine's law of premises liability, a landowner owes a duty of reasonable care to all those lawfully on the land. *Poulin v. Colby Coll.,* 402 A.2d 846, 851 (Me.1979). The determination of a person's legal status as

a guest or a trespasser is a question of fact. *Collomy v. Sch. Admin. Dist. No. 55,* 1998 ME 79, ¶ 6, 710 A.2d 893, 895. A person retains his status as a guest " 'only while he is on the part of the land to which his invitation extends—or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come.' " *Id.* ¶ 7, 710 A.2d at 895 (quoting RESTATEMENT (SECOND) OF TORTS § 332 cmt. 1 (1965)). Therefore, when a guest enters a part of the possessor's premises " 'to which there was no express or implied invitation to go, there can be no recovery for resulting injury, even though he is an invitee to other parts of the premises.' " *Id.* (quoting *Lewis v. Mains,* 150 Me. 75, 77–78, 104 A.2d 432, 434 (1954)).

[¶ 6] Inkel argues that a genuine issue of material fact remains concerning his legal status that should be left to a jury to consider. He contends that the circumstances surrounding his invitation to the cottage create an implied invitation to enter the construction site as well. He points out that he and Livingston were friends; that he had been to Livingston's cottage before for dinner; that the new, partially constructed house was only forty-two feet from the cottage and was the subject of dinner conversation; that the dinner guests did not require Livingston's permission to go in and out of the cottage; and that Livingston was aware that they were doing so. Inkel adds that there were no signs or barriers preventing people from entering the construction site; that the walls were unenclosed; that he had been to the site several times five or six months prior to the accident;[1] and that Livingston, when deposed, "would not say

---

1. Inkel had accompanied a friend to the site to salvage doors and windows during the de-

molition of the existing structure.

for certain that it would have been improper for Mr. Inkel to come to the construction site [at times when Livingston was away at work] to look at the progress of the construction." Accordingly, he argues that a jury could reasonably have concluded that he had Livingston's implied permission to enter the construction site.

[¶ 7] As the trial court found, the undisputed material facts establish that Livingston invited Inkel to the cottage and to the land immediately surrounding it for the limited purpose of having Easter dinner. Inkel's earlier visits to the construction site to salvage doors and windows bore no relation to his Easter dinner invitation. Inkel may have had implied permission to enter and exit the cottage during the dinner to smoke a cigarette on the surrounding grounds. Viewed in a light most favorable to Inkel, however, the record does not establish that he had implied permission to enter the partially constructed new house. The site was not " 'the part of the land upon which [Livingston gave] him reason to believe that his presence [was] desired for the purpose for which he [had] come.' " See id. (quoting RESTATEMENT (SECOND) OF TORTS § 332 cmt. 1 (1965)).

[¶ 8] Inkel also contends that the scope of his invitation, as a social guest, is broader than that of other guests, such as public invitees or business visitors. Under the circumstances, he contends, "it would make little sense to suggest that [he] or the other guests at the party, most of whom were family members of Mr. Livingston's girlfriend, should have recognized that they were confined to the Cottage." Inkel recognizes that under *Poulin* a landowner's duty is the same whether an entrant is a licensee, or a public or business invitee. 402 A.2d at 851. He argues, however, that it does not necessarily follow that the scope of the invitation to the various types of lawful entrants is also the same.

[¶ 9] Just as the determination of an entrant's legal status is a question of fact, *Collomy*, 1998 ME 79, ¶ 6, 710 A.2d at 895, so is the determination of the scope of one's invitation, because it is inextricably linked to the circumstances under which a person has come upon the premises of another. The actual scope of an individual's invitation does not contract or expand based simply on the label—guest, licensee, or invitee—that best describes the individual's relationship to the landowner.

[¶ 10] We agree with the trial court's assessment that Inkel exceeded the scope of his invitation when he entered the construction site and, as a trespasser within the confines of the partially constructed house, neither Livingston nor Solid Rock Builders owed him a duty of reasonable care.

The entry is:

Judgment affirmed.

Dissenting: SAUFLEY, C.J., and DANA, and CALKINS, JJ.

CALKINS, J., with whom SAUFLEY, C.J., and DANA, J., join, dissenting.

[¶ 11] I respectfully dissent. I would vacate the judgment in favor of Donald Livingston because there is a genuine issue of material fact as to whether Leonard Inkel went beyond the scope of Livingston's invitation to him. The Court has adequately set forth the facts as they appear in the parties' statements, although I add the undisputed fact that the new structure was between the cottage and the shoreline. My disagreement lies with the Court's conclusion that the record does not support a reasonable inference of an implied permission to Inkel to enter the new structure.

[¶ 12] When viewed in the light most favorable to Inkel, the following facts and inferences therefrom would allow a fact-

finder to find that Livingston's invitation impliedly extended to the new structure: Livingston knew that his guests were in and out of the cottage; the new structure was the subject of conversation and apparently some curiosity to the guests; the structure was close to the cottage; the structure was located between the cottage and the ocean; and Livingston had not erected any barriers around the structure nor given any warnings to his guests not to enter the structure. Furthermore, Inkel was a friend who had been to the construction site previously. Reasonable people in Livingston's position would anticipate that the guests, when outside the cottage, were likely viewing the structure and passing close by it to view the ocean and would anticipate that, in the absence of any instructions to Inkel not to enter the structure, it was reasonably foreseeable that he would enter it. Because sufficient facts have been presented from which a fact-finder could find that the scope of the invitation included the new structure, I would vacate the grant of summary judgment to Livingston.

[¶ 13] In *Poulin v. Colby College,* 402 A.2d 846, 851 (Me.1979), we abolished the distinction between invitees and licensees and held that both were owed the duty of reasonable care by landowners or occupiers. We declined to follow New Hampshire and other states that have abandoned the invitee, licensee, and trespasser classifications for premises liability. *See Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976), and cases cited therein. In retaining the classification of trespasser we said, "There remains the possibility that the abandonment of the status of trespasser would place an unfair burden on a landowner who has no reason to expect a trespasser's presence." *Poulin,* 402 A.2d at 851 n. 5. I do not suggest, and Inkel has not argued, that we should do away with the trespasser distinction. Indeed, this case is not about a trespasser. Inkel was not in the position of an unknown trespasser. He was not someone who came uninvited and unwanted to the premises. He was a social guest, on premises owned by his host. His presence in the new structure should have been anticipated by Livingston in the absence of any warning to stay away from it. The facts are sufficient for a fact-finder to determine that Inkel was still an invitee when he entered the new structure.