2009 ME 133

**ESTATE OF Joshua S. CILLEY**

v.

**Jennifer LANE.**

Supreme Judicial Court of Maine.

Argued: Oct. 27, 2009.

Decided: Dec. 29, 2009.

Brett D. Baber, Esq. (orally), Lanham Blackwell, P.A., Bangor, ME, for the Estate of Joshua Cilley.

Eugene C. Coughlin, Esq. (orally), Vafiades, Brountas & Kominsky, LLP, Bangor, ME, for Jennifer Lane.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1]  The Estate of Joshua S. Cilley appeals from a summary judgment of the Superior Court (Washington County, *Hunter, J.*) in favor of Jennifer Lane on the Estate's complaint that Lane's negligence led to Joshua Cilley's death.  The issue before us is whether Lane owed Cilley a duty of care.  The Estate contends that Lane owed Cilley a duty of care because he was a social guest in her home, and in the alternative has asked us to recognize a new common law duty: the affirmative duty to seek emergency assistance through reasonable means.  We conclude that Lane did not breach any duty of care that she owed to Cilley, and affirm the judgment.

## I.  BACKGROUND

[¶ 2]  Because the Estate was the non-moving party, the summary judgment record must be considered—and will be discussed—in the light most favorable to the Estate.  *See Jorgensen v. Dep't of Transp.*, 2009 ME 42, ¶ 2, 969 A.2d 912, 914.  On another standard, the record could be read more favorably to Lane.

[¶ 3]  In 2003, Jennifer Lane and Joshua Cilley began a romantic relationship that continued over the next year and one-half.  Although the two had discussed marriage, they had also broken up and reunited several times during those months.  On January 30, 2005, Lane told Cilley that they needed to take some time off from their relationship, but that they would still be friends.  During the late afternoon of the next day, January 31, 2005, Lane was drinking beer and eating pizza with two friends who lived near her at a trailer park in Washington County.

In the early evening, after drinking four or five beers, Lane left her friend's trailer and walked a short distance to her own trailer to call her daughter.

[¶ 4] Approximately five minutes after Lane reached her home, Cilley arrived and entered. Lane told him to leave; Cilley refused and initially blocked Lane's attempt to exit the trailer. The parties dispute what happened next. Lane claims that she tried to use her cell phone to call a neighbor for help with removing Cilley from her home. Lane also claims that, while she was on the phone, Cilley went out to his car, and returned carrying a small caliber rifle. He then grabbed her cell phone, threw it against the wall, and broke it. The Estate claims that the rifle was already inside the trailer. Whether Cilley brought the rifle inside, or grabbed it from inside Lane's trailer, it is undisputed what happened next.

[¶ 5] Lane walked out of her trailer. As she was doing so, she heard a loud pop, which she later described as sounding like a firecracker. Lane looked back, and saw Cilley fall to the floor. She then heard him say that "it was an accident" and "it was not supposed to happen." Lane, who did not see any blood, did not investigate or attempt to assess whether Cilley was injured. She returned to her friend's trailer and told her two friends that Cilley had pretended to shoot himself inside her trailer.

[¶ 6] Lane's friends looked out the window and saw Cilley lying on the steps to Lane's trailer, halfway outside the door. They went over to Cilley, and noted that he was mumbling, "It was an accident."

One of the friends picked up the gun lying near Cilley, and asked him if he had been shot. She noted that Cilley was turning white, and had difficulty breathing. The other friend went to a neighboring trailer and called 911.

[¶ 7] Cilley could not be resuscitated at the hospital. He died as a result of a single gunshot wound to his abdomen from a .22 caliber bullet. According to the physician who treated him, Cilley could have been resuscitated if he had arrived at the hospital five to ten minutes earlier.

[¶ 8] Cilley's Estate filed a four-count complaint in the Superior Court against Lane in February 2006, alleging battery, negligence, negligent failure to assist, and conscious pain and suffering.[1] Lane filed a counterclaim in April seeking damages for negligent infliction of emotional distress and malicious prosecution. The Estate filed for summary judgment on Lane's counterclaim in October 2006. In March 2007, the court granted summary judgment to the Estate on the first count in Lane's counterclaim, and the parties agreed that the second count was premature and stipulated to its dismissal without prejudice. In November 2008, the Estate dismissed the counts alleging battery and negligence. Lane filed for summary judgment on the remaining counts of negligent failure to assist and conscious pain and suffering.

[¶ 9] In a thoughtful decision, the court granted Lane's motion for summary judgment. The court reasoned that "[a]bsent a special relationship, a person owes no duty to rescue a person notwithstanding how dire the imperiled person's circumstances

---

1. Title 18–A M.R.S. § 2–804(c) (2008) provides that:

Whenever death ensues following a period of conscious suffering, as a result of personal injuries due to the wrongful act, neglect or default of any person, the person who caused the personal injuries resulting in such conscious suffering and death shall, in addition to the action at common law and damages recoverable therein, be liable in damages in a separate count in the same action for such death. . . .

are and irrespective of how slight an effort would be required to accomplish the rescue." The court further reasoned that even if Maine imposed a common law duty on social hosts to render emergency assistance for injured guests, such a duty would not apply in this case because Cilley was a trespasser in Lane's home, not a guest. The Estate filed a timely appeal pursuant to 14 M.R.S. § 1851 (2008) and M.R.App. P. 2.

## II. DISCUSSION

[¶ 10] "We review an entry of summary judgment for errors of law, viewing the evidence in the parties' statements of material facts and any record references therein in the light most favorable to the party against whom the judgment was entered...." *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897, 902. "To withstand a motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action." *Id.* (quotation marks omitted). Therefore, a plaintiff who brings a cause of action for negligence must establish a prima facie case that the defendant owed him a duty of care, the defendant breached that duty, and the breach was a proximate cause of some injury to the plaintiff. *See Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 8, 969 A.2d 935, 938. The essential issue here, whether Lane owed Cilley a duty of care, is a question of law that we review de novo. *See Radley v. Fish*, 2004 ME 87, ¶ 6, 856 A.2d 1196, 1198–99.

[¶ 11] "A duty is an obligation, to which the law will give recognition and effect, to conform to a particular manner of conduct toward another." *Budzko v. One City Ctr. Assocs. Ltd. P'ship*, 2001 ME 37, ¶ 10, 767 A.2d 310, 313 (quotation marks omitted). Maine law does not impose a "general obligation to protect others from harm not created by the actor. 'The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.'" *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 12, 738 A.2d 839, 844 (quoting Restatement (Second) of Torts § 314 (1965)). Nevertheless, the Estate makes two arguments as to why Lane did have a duty to act and contact emergency assistance.

[¶ 12] First, the Estate asserts that Lane owed Cilley a duty because she was a social host and he was her guest. The Estate contends that the court improperly determined Cilley was a trespasser because the parties did not raise that issue. The Estate argues that Lane was required to plead trespass as an affirmative defense pursuant to M.R. Civ. P. 8(c)[2] and, had Lane done so, the Estate asserts it would have provided evidence of Cilley's right to be on the premises to show that he was not a trespasser but a lawful entrant. Because the parties did not raise the issue, the Estate contends that the issue is waived and the court erred in its finding. We disagree.

2. M.R. Civ. P. 8(c) provides that:
In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, comparative fault, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, immunity, injury by co-employee, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

[¶ 13] Initially, we note that trespass is not an affirmative defense. An affirmative defense is one "raising new facts or arguments that, if true, will defeat the plaintiffs or prosecution's claim, even if all allegations in the complaint are true." Black's Law Dictionary 430 (7th ed. 1999). Trespass in a negligence suit, however, is a threshold issue. It is a finding that alters the standard of care owed by the landowner to the entrant, and thus does not fall within the affirmative defenses of M.R. Civ. P. 8(c). *Cf. Estes v. Smith,* 521 A.2d 682, 685 n. 1 (Me.1987) (noting that a trial court should not introduce, *sua sponte,* the issue of an affirmative defense not raised by the defendant). In addition, Lane flagged the trespass issue in her answer when she denied the Estate's allegation that Cilley had "visited [her] on or about January 31, 2005 at her trailer in Princeton, Maine."

[¶ 14] Further, the defendant's statement of material facts generated the issue. In her statement, Lane alleged, and the Estate admitted, that she had asked Cilley to leave her trailer and that he refused to do so, and that he also initially prevented her from leaving. This admitted statement was the basis for the court's finding that Cilley was a trespasser. In addition to the specific facts set forth by the parties in summary judgment practice, a court will "consider any reasonable inferences that a fact-finder could draw from the given facts." *Curtis v. Porter,* 2001 ME 158, ¶ 9, 784 A.2d 18, 22. Drawing the most favorable inference to the Estate, as we must, this fact still clearly shows that Cilley was no longer welcome in Lane's home. A licensee who is asked to leave and refuses becomes a trespasser. *See Nelson v. Burnham & Morrill Co.,* 114 Me. 213, 217, 95 A. 1029, 1031 (1915). Contrary to the Estate's contention, the court did not err in classifying Cilley as a trespasser, because the record supports the court's finding that Cilley was in Lane's home unlawfully when he shot himself. *See Collomy v. Sch. Admin. Dist. No. 55,* 1998 ME 79, ¶ 6, 710 A.2d 893, 895 (defining a trespasser as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise").

[¶ 15] Because Cilley was a trespasser at the time of the incident, Lane's only duty to him was to refrain from wanton, willful, or reckless behavior. *See id.* ¶ 15, 710 A.2d at 897. "To entitle a trespasser to recover for an injury, he must do more than show negligence. It must appear that a wanton or intentional injury was inflicted on him." *Foley v. H.F. Farnham Co.,* 135 Me. 29, 35, 188 A. 708, 712 (1936). Lane's failure to contact emergency assistance for Cilley immediately after she heard the pop does not rise to the level of wanton, willful, or reckless behavior because Lane did not create the danger to Cilley, nor commit any act that led to his initial injury. Our cases are devoid of any precedent that would require a landowner to affirmatively act to help a trespasser injured through no fault or act of the landowner. *See Collomy,* 1998 ME 79, ¶ 15, 710 A.2d at 897 (concluding that a school district's act of leaving flammable materials in an unlocked, cinder block building on the playground without warning signs was not wanton, willful, or reckless behavior); *Cogswell v. Warren Bros. Rd. Co.,* 229 A.2d 215, 220 (Me.1967) (concluding that neither the act of parking a flat bed trailer in a public street without attempting to prevent its use as a teeter board by children, nor failing to keep the trailer under observation was wanton, willful, or reckless behavior); *Lewis v. Mains,* 150 Me. 75, 76, 78, 104 A.2d 432, 433, 434 (1954) (deciding there was no wanton, will-

ful, or reckless behavior as would be required to create liability to a trespassing child who was injured after climbing a large sawdust pile and coming into contact with power lines hanging close to the top of the pile). We therefore conclude that Lane did not breach any duty she owed to Cilley as a trespasser.

■ [¶ 16] With its second argument, the Estate urges us to recognize a new common law duty: the duty to seek affirmative emergency assistance through reasonable means. The Estate contends that the mores of the community and the abundance of technology mandate recognition of this duty in order to enhance public safety. Initially, the Estate framed this duty as one a social host owes to her injured guests, but substantially broadened the reach of the duty during oral argument. There, the Estate contended that the factual predicate for imposing this duty is simply *witnessing* another person's injury. A person who witnesses another's injury, the Estate contends, although not required to render any aid herself, must contact emergency assistance as long as she can do so in a safe manner. In the alternative, the Estate argued that the duty could be limited, so that the duty to seek emergency assistance would apply only when a homeowner witnesses injury to another on her property, regardless of the injured person's legal status. In support of both alternatives, the Estate asserts that a special relationship arises when the witness observes injury to the other party, and it is this "relationship" that imposes a duty to act, regardless of any other relationship between the parties and regardless of whether the witness caused or could have foreseen the harm.

■ [¶ 17] We have held that a party does not have an affirmative duty to aid or warn another person in peril unless the party created the danger or the two people had a special relationship that society recognizes as sufficient to create the duty. *See Fortin v. Roman Catholic Bishop of Portland,* 2005 ME 57, ¶ 37, 871 A.2d 1208, 1222; *Bryan R.,* 1999 ME 144, ¶ 14, 738 A.2d at 845; *Jackson v. Tedd–Lait Post No. 75, Am. Legion,* 1999 ME 26, ¶ 8, 723 A.2d 1220, 1221; *cf. Dragomir v. Spring Harbor Hosp.,* 2009 ME 51, ¶¶ 18–19, 970 A.2d 310, 315–16 (discussing special relationships recognized in Maine and the criteria for recognizing a new special relationship). Certain narrowly defined, special relationships give rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger,[3] employer and employee,[4] parent and child,[5] or innkeeper and guest.[6]

[¶ 18] The Estate has asked us to add a new relationship to this list, and to impose a narrow but unlimited duty to contact emergency assistance. When faced with a party arguing for recognition of a

---

3. *See Packard v. Whitten,* 274 A.2d 169, 178 (Me.1971) (noting that a common carrier must exercise "a particularly high quality of vigilance ... to meet the standard of due care to his passengers").

4. *See Dragomir v. Spring Harbor Hosp.,* 2009 ME 51, ¶ 12, 970 A.2d 310, 314 (outlining the standard of an employer's vicarious liability for acts of an employee); *id.* ¶ 23, 970 A.2d at 316–17 (providing the standard for holding an employer liable for an employee's acts under principles of negligent supervision).

5. *See Merchant v. Mansir,* 572 A.2d 493, 494 (Me.1990) (adopting the Restatement (Second) of Torts section 316 regarding the duty of a parent to control the conduct of a child).

6. *See Brewer v. Roosevelt Motor Lodge,* 295 A.2d 647, 651 (Me.1972) (stating that "a proprietor of an inn ... or similar establishment is liable for an assault upon a guest" by another party "where he has reason to anticipate such assault, and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with its execution").

new duty of care, we have said that "[i]n the decision of whether or not there is a duty, many factors interplay: the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and social ideas as to where the loss should fall." *Trusiani v. Cumberland & York Distribs., Inc.,* 538 A.2d 258, 261 (Me.1988) (quoting William Prosser, Palsgraf *Revisited,* 52 Mich. L.Rev. 1, 15 (1953)).

[¶ 19] The duty proposed by the Estate stands in direct opposition to the principle that a person does not have an affirmative duty to aid or warn another person in peril. *See Bryan R.,* 1999 ME 144, ¶ 12, 738 A.2d at 844. Broadly, this rule is known as the "no duty to rescue" rule. In response to a few notorious instances of bystander inaction, some state legislatures have enacted laws imposing criminal or civil liability for failing to render reasonable assistance to a person in danger or to immediately report a crime that has been committed.[7] Although Cilley's family did ask the Maine Legislature to enact a law imposing criminal sanctions and creating civil liability for persons who observe that another has received a serious injury and then fails to immediately report and request first aid for that person, the Legislature did not enact the requested law. In accordance with our precedent, we also must decline the Estate's request that we recognize a new common law duty.

[¶ 20] First, the "relationship," i.e., the witnessing of an injury, that the Estate contends imposes a duty to act is unlike any other relationship recognized as sufficient to create a duty of care. The law imposes a duty to aid or protect on established, legal relationships, such as employer-employee or parent-child, because one party has control over another or, in the case of a landowner, control over a location. *See* W. Page Keeton, et al., Prosser and Keeton on Torts § 56, at 383–85, § 57, at 386 (5th ed. 1984). These duties are widely known and largely accepted, and the affected parties are able to plan and prepare according to known rights and responsibilities. Outside of these established relationships, we have recognized that other special relationships may create a duty of care based on these same factors—the closeness and nature of a pre-existing relationship between the parties[8] and the measure of control.[9] In contrast, the duty the Estate urges us to recognize has none of these features: the duty arises not from any relationship be-

---

7. *See, e.g.,* Fla. Stat. Ann. § 794.027 (LEXIS through 2009 Sess.); Haw.Rev.Stat. Ann. § 663–1.6(a) (LEXIS through 2009 Sess.); Mass. Ann. Laws ch. 268 § 40 (2002); Minn. Stat. Ann. § 604A.01 (LEXIS through 2009 Sess.); Ohio Rev.Code. Ann. § 2921.22 (LEXIS through Nov. 10, 2009 legislation); R.I. Gen. Laws § 11–37–3.1 (LEXIS through Jan. 2009 Sess.); R.L Gen. Laws § 11–56–1 (LEXIS through Jan. 2009 Sess.); Vt. Stat. Ann. tit. 12, § 519 (2002); Wash. Rev.Code § 9.69.100 (LEXIS through 2009 Sess.); Wis. Stat. Ann. § 940.34 (LEXIS through Act 39 of 2009 Sess.).

8. *See Fortin v. Roman Catholic Bishop of Portland,* 2005 ME 57, ¶ 37, 871 A.2d 1208, 1222 (concluding a church may owe a duty to prevent a child from being harmed by a priest when there is a close connection between the church and child based on trust, vulnerability, and disparity of power).

9. *Cf. Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.,* 1999 ME 144, ¶ 24, 738 A.2d 839, 847 (concluding a church does not have a duty to protect a plaintiff from an adult member of the congregation who had sexually abused the plaintiff when he was younger); *Trusiani v. Cumberland & York Distribs., Inc.,* 538 A.2d 258, 262 (Me.1988) (deciding that an employer does not have a duty to prevent an intoxicated employee from operating his vehicle when he was not visibly intoxicated on self-supplied liquor).

tween the parties, but simply from presence at the opportune moment.

[¶ 21]  Second, we are hesitant to create a duty that would impose liability for the failure to act, or nonfeasance.  Although the common law has evolved to recognize liability for nonfeasance, such recognition is limited to situations where there is a special relationship between the parties and/or occasions when the "dangerous situation was created by the defendant."  *See Bryan R.*, 1999 ME 144, ¶¶ 13–14, 738 A.2d at 844–45; *see also* 12 M.R.S. § 11223 (2008) (requiring a person who has injured another while hunting to identify herself to the victim, render first aid, and give immediate notice of the incident to a game warden or other law enforcement officer); 12 M.R.S. § 13106–B (2008) (requiring the operator of a snowmobile involved in an accident that results in personal injury to render reasonable assistance to the injured person and immediately report the accident to the nearest law enforcement officer); 29–A M.R.S. § 2252 (2008) (requiring the operator of a motor vehicle involved in an accident resulting in personal injury to another to stop, return to the scene, and render reasonable assistance to the injured person).  One of the primary reasons for limiting duties in cases of nonfeasance is the potential for boundless liability:

> We know of no principle of law by which a person is liable in an action of tort for mere nonfeasance by reason of his neglect to provide means to obviate or ameliorate the consequences of the act of God, or mere accident, or the negligence or misconduct of one for whose acts towards the party suffering he is not responsible.  If such a liability could exist, it would be difficult, if not impossible, to fix any limit to it.

*Cloutier v. Oakland Park Amusement Co.*, 129 Me. 454, 461, 152 A. 628, 631 (1930) (quotation marks and citation omitted).  If we were to adopt the duty [10] requested by the Estate, each person would be obligated to contact emergency assistance *any* time she witnessed another's injury, which would indeed be a duty without any practical limit.  The Estate contends that liability for breaches of this new duty would be constrained by principles of causation and by the fact that this is a limited duty that requires a telephone call but not any actual aid.  Those constraints, however, would not protect an individual from the necessity of defending a lawsuit, even if she were ultimately found not to have breached the duty.

### III.  CONCLUSION

[¶ 22]  We adhere to our established precedent and conclude that absent a special relationship or conduct that has endangered another, a person owes no duty to call aid for an injured person.

The entry is:

Judgment affirmed.

---

10.  Recognition of the duty proposed by the Estate would also alter this State's established law on the duty a landowner owes to entrants on her land, which is now determined by the entrant's status as a guest or invitee on one hand, and a trespasser on the other.