STATE OF MAINE
YORK, SS.

SUPERIOR COURT
Civil Action
Docket No. CV-14-0188

MANDY LETOURNEAU,

Plaintiff,

v.

YORK COUNTY REFERRAL, LLC,
d/b/a YORK COUNTY VETERINARY
HOSPITAL,

Defendant.

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT**

Presently before the court is defendant's motion for summary judgment pursuant to M.R. Civ.P. 56. For the reasons set out below, the motion is denied.

**Facts**

On February 11, 2013, Mandy Letourneau sustained injuries when she slipped and fell in the parking lot of the York County Veterinary Hospital, a veterinary clinic in Arundel ("the Clinic"). On that morning Ms. Letourneau had left her home in Waterboro at approximately 10:00 am with her three-month-old daughter to drive to an appointment at the Family Chiropractic Clinic in Kennebunk. (Def.'s S.M.F. ¶ 17.) After the appointment, she stopped for coffee and food at a Dunkin' Donuts drive-through on her way home. (*Id.* ¶ 18.) After leaving Dunkin' Donuts, her daughter started to fuss. Plaintiff attempted to quiet her by giving her a bottle, but the infant dropped the bottle onto the floor of the car. Ms. Letourneau decided to pull into the driveway and parking area of the Clinic to settle the infant. It was approximately 11:00 am. (*Id.* ¶¶ 19-22.)

1

It was snowing when Ms. Letourneau set out that morning for the chiropractor, and it was snowing during her trip home. (*Id.* ¶ 23.) The storm that morning was the tail end of a blizzard that had begun on February 8. (Pl.'s S.M.F. ¶ 2.) Plaintiff testified that at the time she pulled into the Clinic's driveway there was an inch or two of snow in the parking lot. (*Id.* ¶ 24.)[1] The snow covered the entire parking lot and was deep enough to cover plaintiff's shoe when she stepped out of her vehicle. (Pl.'s S.M.F. ¶ 10.) The ground felt slippery and icy to her. (*Id.* ¶ 12.) Plaintiff exited her vehicle and walked around the rear of her vehicle to tend her daughter. (Def.'s S.M.F. ¶ 30.) After tending to the infant she walked back around the vehicle to get back in and then slipped and fell. (*Id.*)

The Clinic is owned by Dr. Clifton E. Temm, II, (through York County Referral, LLC) and employs two technicians, two receptionists, and an office manager. (Def.'s S.M.F. ¶ 1.) Between 20 to 50 people enter and leave the Clinic on any given day and there are approximately 2 to 3 client vehicles in the parking lot at any given time. (*Id.* ¶¶ 2-3.)

The Clinic hires Chuck Stevens ("Stevens"), an independent contractor, to maintain the parking lot during the winter by plowing the snow and applying sand and salt. (Def.'s S.M.F. ¶ 5.) During its ten years of operation no member of the Clinic's staff has ever shoveled, plowed, sanded, or salted the parking lot during the winter. (*Id.* ¶ 9.) Staff do clear and maintain the small cement pad at the entrance to the building.

---

[1] The record as to the exact conditions and amount of snow on the morning of February 11 is disputed. (Pl.'s Opp. Def.'s S.M.F. ¶¶ 33-35; Pl.'s S.M.F. ¶¶ 80-88) The court views the record in the light most favorable to plaintiff, as the nonmoving party. *See Brown v. Delta Tau Delta*, 2015 ME 75, ¶2, 118 A.3d 789; *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484. Although court accepts the plaintiff's testimony for the purposes of this summary judgment motion, her assertion that there was "old snow," Pl.'s S.M.F. ¶11, is unsupported by her deposition, in which she conceded she lacked personal knowledge as to whether the Clinic had failed to clear snow from previous storms. (Letourneau Dep. 177-78.)

2

(*Id.* 11.) The Clinic has never received a complaint about or a claim relating to the condition of the parking lot; and no customer has ever been injured as a result of a slip-and-fall in the parking lot. (*Id.* ¶ 12.)  Crystle Bell, the Clinic receptionist, testified that no customers complained about the parking lot conditions on the morning of February 11. (*Id.* ¶ 32.)[2]

Stevens or one of his coworkers plowed the Clinic parking lot twice on February 8, and once on February 9, 10, and 11. (Def.'s S.M.F. ¶ 14; Stevens Dep. Ex. 12.)  On February 10 Stevens noted "drifts" of snow and partially plowed the lot. (Def.'s S.M.F. ¶ 14; Stevens Dep. Ex. 12.) On February 11, the morning the plaintiff fell, Stevens had arrived at the Clinic at 6:05 am and noted "1 inch/drifts" of snow. (*Id.*)  He plowed the entire lot and applied "1 yard sand/salt." (*Id.*) In his deposition, Stevens testified that he actually applied between ½ and ¾ of a yard of sand and salt. (Stevens Dep. 39.) He left the Clinic lot at 6:45 am. (Def.'s S.M.F. ¶ 14; Stevens Dep. Ex. 12.)

### Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact . . . and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c); *see also Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52.   To sustain a cause of action in negligence, a plaintiff must prove (1) defendant had a duty to maintain its premises in reasonably safe condition, (2) defendant breached that duty, (3) the breach caused plaintiff to fall, and (4) the fall resulted in harm to the plaintiff.   *See Durham v. HTH Corp.*, 2005 ME 53,

---

[2] Plaintiff qualifies this fact by asserting "Crystle Bell has no collection (*sic.*) of the conditions."   To the extent this qualification is intended to call into question Bell's credibility, it is not taken into account for purposes of summary judgment.

3

¶ 8, 870 A.2d 577. The existence of a duty owed to an injured party is the foundational element of a negligence action. *See Lewis v. Mains*, 150 Me. 75, 76, 104 A.2d 432, 433 (1954) ("Negligence rests upon duty.") Whether one party owes a duty of care to another is essentially a question of law. *See Brown v. Delta Tau Delta*, 2015 ME 75, ¶¶ 9, 14, 118 A.3d 789; *Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1996); *Trusiani v. Cumberland & York Distributors, Inc.*, 538 A.2d 258, 261 (Me. 1988).

The central thrust of the motion for summary judgment is that defendant did not owe a duty of care to plaintiff,[3] for two reasons. First, defendant contends that it had no legal no duty to keep the parking lot plowed and sanded during an ongoing winter storm. Second, defendant contends that even if there is such a duty, it was not owed to plaintiff because she was a trespasser on the premises.

### Duty to Maintain Reasonably Safe Premises in Winter Weather

Business owners generally have a "positive duty of exercising reasonable care in providing reasonable safe premises . . . when it knows or should have known of a risk to customers on its premises." *Budzko v. One City Center Associates*, 2001 ME 37, ¶ 11, 767 A.2d 310 (citing *Currier v. Toys 'R' Us Inc.*, 680 A.2d 453, 455-56 (Me. 1996)). In *Budzko*, the Law Court confirmed that this duty requires business owners to "reasonably respond to a foreseeable danger posed to the invitees by a continuing snow or ice storm." 2001 ME 37, ¶ 13, 767 A.2d 310. In so doing, the Court rejected the so-

---

[3] Defendant advances two additional arguments in support of summary judgment: (1) plaintiff has not established prima facie evidence of breach because there is no evidence in the record that the defendants had notice there was potentially ice underneath the snow that caused plaintiff to slip, and (2) plaintiff has presented no evidence of a link between the ice she alleges was under the snow and her fall. Neither of these arguments is persuasive for summary judgment purposes. The court views the asserted facts and all reasonable inferences therefrom in plaintiff's favor as the party opposing summary judgment. The presence of ice underneath snow, and defendant's actual or implied notice thereof, are reasonable inferences to draw in the circumstances and therefore may be material facts in dispute. The very presence of ice at all, though, may or may not be a material fact in any event. *Cf. Budzko*, 2001 ME 37, ¶ 1, 767 A.2d 310 (describing "accumulating, freezing precipitation").

4

called "storm in progress" doctrine, a well recognized exception to the general common law duty of business owners to provide reasonably safe premises to invitees during an ongoing winter storm. *Id.* ¶ 13, n. 2 ("This 'storm in progress' rule appears inconsistent with the duty of reasonable care owed by a business owner reasonably anticipating a significant number of invitees during a Maine winter storm.")

Defendant contends that the rule in *Budzko* is a limited one, and should be applied only to larger businesses that have "significant numbers of invitees [who] may be anticipated to enter or leave the premises during a winter storm." *Budzko,* 2001 ME 37, ¶ 16, 767 A.2d 310. In support of this contention defendant points to two more recent decisions by the Law Court recognizing the realities of Maine winters and declining to extend *Budkzo. See Alexander v. Mitchell,* 2007 ME 108, 930 A.2d 1016; *Davis v. R C & Sons Paving, Inc.,* 2011 ME 88, 26 A.3d 787. In the former case the Court noted that "our long-established limitation on liability related to winter weather hazards was not changed by our holding in *Budzko*" and "[n]o open-ended duty was asserted [therein]". *Alexander,* 2007 ME 108, ¶ 24, 930 A.2d 1016. In the latter, the Court stated that due to "the annual risks created by the relatively harsh winters in Maine" it may be "simply impractical" to "fully protect against hazards created by snow and ice." *Davis,* 2011 ME 88, ¶ 21, 26 A.3d 787.

Despite the Court's broad pronouncements in *Alexander v. Mitchell* and *Davis v. R C & Sons Paving, Inc.,* each case is distinguishable on its facts from the instant case (and from *Budzko*) and thus do not provide direct precedent for rule defendant would have the court apply here. In the former case, the question was whether a contractor hired by a municipality to plow, sand and salt the roads had a duty to keep the road on which a fatal accident occurred free of snow and ice based on his contractual obligations to the town. *Alexander,* 2007 ME 108, ¶ 12, 930 A.2d 1016, In the latter, defendant was also

5

contractor who had been hired to plow and sand a parking lot; the Court held no duty of care arose with respect to the contractor.  *Davis*, 2011 ME 88, ¶ 21, 26 A.3d 787.

Neither *Alexander* nor *Davis* involved the owner of a business (or the owner/possessor of land) whose legal duty to invitees or others coming onto the premises has long been recognized at common law.  Neither case modifies or limits the common law duty of reasonable care applicable to business owners to provide reasonably safe premises when it knows or should have known of a risk to invitees on its premises.  *See Patterson v. U.S.*, 599 F. Supp. 2d 34, 43 (D. Me. 2009) (federal court, applying Maine law, held that *Alexander* not controlling in determining whether a post office had a duty of care toward invitees on premises over which it exercised control).

Absent clear authority to the contrary, *Budzko* governs the question of a business owner's duty to maintain reasonably safe premises during a winter storm.  It is true that *Budzko's* holding rests, in part, on the recognition that "significant numbers of invitees" were anticipated in that case.  The record in this case establishes that up to 50 people per day come and go from the veterinary hosptial during regular business hours. (Def.'s S.M.F. ¶2.)  While this is far less than the numbers of anticipated invitees in *Budzko*, the court is not prepared to rule as a matter of law that anticipating up to 50 customers in a day is not a "significant number" for purposes of imposing some measure of duty on a business owner.

Moreover, the predicate legal determination as to the existence or scope of duty owed to an injured party involves a "multi-factored analysis" including factors such as forseeabilty, control, relationship of the parties and other relevant policy considerations. *Brown*, 2015 ME 75, ¶¶ 9, 14, 118 A.3d 789.  These factors implicate not only the number of invitees that may reasonably be anticipated on a given day, but also a number of other considerations, including for example, the severity of the weather, the

6

condition of the premises at relevant times, the efforts of the business or its delegee to stay abreast of the storm and keep the premises reasonably safe, et cetera. Facts material to these considerations remain in dispute. If the record facts asserted and all reasonable inferences therefrom are viewed in the light most favorable to plaintiff, which is the standard on a motion for summary judgment, the court is not prepared to rule, as a matter of law, that a business owner in these circumstances should have had no duty whatsoever to maintain a reasonably safe parking area for its customers or others.[4]

## Plaintiff's Status

Defendant further contends that even if there was a duty to maintain reasonably safe premises for business invitees, this duty did not extend to plaintiff as a matter of law because she was a trespasser. Owners or possessors of land have a much more limited duty with regard to those who trespass on their property. *See Estate of Cilley v. Lane*, 2009 ME 133, ¶ 15, 985 A.2d 481 (observing only duty to trespasser is to "refrain from wanton, willful, or reckless behavior.") The instant record, however, does not support summary judgment on that basis.

An individual's status—whether an invitee, licensee, or trespasser—is a question of fact. *See Poulin v. Colby Coll.*, 402 A.2d 846, 849 (Me. 1979). There is at minimum a disputed issue of material fact as to whether plaintiff was trespassing when she entered the premises, parked her vehicle, and fell. There were no "no trespassing" signs posted

---

[4] In undertaking a duty analysis, a court "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." *Cameron*, 610 A.2d 279, 282 (Me. 1996) (quoting *Thing v. La Chusa*, 771 P.2d 814, 819 n.3 (1989)). However, that is not to say that in light of the facts that may be established at trial, a jury may well conclude that the Clinic acted perfectly reasonably in the circumstances.

7

in the parking lot. (Pl.'s S.M.F. ¶ 41.) Dr. Temm was equivocal as to general visitor practices and policies at the Clinic; he testified that persons on the Clinic premises would be asked why they were there before being asked to leave. (Temm Dep. 25.) He further testified that the general public is invited, but only to use the veterinary services offered. (Id. 27.) Office manager Anne Gannon testified that if she saw a mother tending to a crying baby in the parking lot, she would not ask her to leave. (Pl.'s S.M.F. ¶ 20.) It is undisputed that plaintiff was not asked to leave. *Cf. Lane*, 2009 ME 133, ¶ 15, 985 A.2d 481 (plaintiff who was affirmatively told to leave was a trespasser, even when construing factual inferences in her favor). Summary judgment is therefore inappropriate.

Accordingly, Defendant's motion for summary judgment is DENIED.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED**

DATE:    January 19, 2016

Wayne R. Douglas
Justice, Superior Court

8

CV-14-188

ATTORNEY FOR PLAINTIFF:
PETER CLIFFORD
CLIFFORD & CLIFFORD LLC
62 PORTLAND RD SUITE 37
KENNEBUNK ME  04043


ATTORNEY FOR DEFENDANT:
DAVID VERY
NORMAN HANSON & DETROY LLC
P O BOX 4600
PORTLAND ME  04112-4600